The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

| | |
|---|---|
| CARL HAGLUND,<br><br>                    Plaintiff,<br><br>        v.<br><br>KSHAMA SAWANT, individually and in her<br>individual capacity as a member of the Seattle<br>City Council, and the CITY OF SEATTLE, a<br>Washington municipal corporation,<br><br>                    Defendants. | No. 2:17-cv-01614-MJP<br><br>DEFENDANTS' MOTION FOR<br>JUDGMENT ON THE PLEADINGS<br><br>NOTE ON MOTION CALENDAR:<br>DECEMBER 8, 2017 |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
No. 2:17-cv-01614-MJP

# TABLE OF CONTENTS

**Page**

I. Relief Requested ...................................................................................................... 1

II. Plaintiff's Complaint................................................................................................ 1

III. Principal Issues ........................................................................................................ 3

IV. Argument ................................................................................................................. 4

    A. Legal Standard. ........................................................................................... 4

    B. Plaintiff's second claim for relief fails to allege facts establishing a right to recover for tortious interference. .......................................................... 5

    C. Plaintiff's third claim for relief fails to plausibly allege that defendants violated his rights under chapter 63.60 RCW or the common law of privacy.. ................................................................................... 7

        1. Plaintiff fails to allege facts establishing the essential elements of a claim under RCW 63.60.050. ........................................ 7

        2. Plaintiff may not bring a claim under chapter 63.60 for the use of his name in a political campaign when that use did not falsely claim an endorsement................................................................ 8

        3. Plaintiff's claim under chapter 63.60 RCW is also barred by the exception covering the use of one's name in connection with matters of political, newsworthy, or public interest, including criticism and satire. ........................................... 8

        4. Plaintiff fails to allege facts establishing a plausible invasion of any common-law right of publicity or privacy through misappropriation......................................................... 10

        5. The First Amendment protects robust public debate about matters of public interest................................................................... 12

    D. Plaintiff's ninth claim for relief fails to adequately allege that defendants deprived him of any protected interest without due process of law. ................................................................................... 13

        1. Plaintiff does not allege any recognizable property or liberty interest that is protected by the due process clause of the Fourteenth Amendment............................................................ 13

        2. Plaintiff's alleged privacy interest is not guaranteed by the due process clause of the Fourteenth Amendment. ....................... 16

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - i
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

E.  Plaintiff's eighth claim for relief fails to adequately allege that defendants violated plaintiff's rights under the equal protection clause.................................................................................................. 17

    1.  Plaintiff must plead sufficient facts to establish an equal protection claim under a "class of one" theory. ............................. 17

    2.  Plaintiff does not allege any facts establishing that defendants treated similarly situated landlords differently or that they acted irrationally. ....................................... 18

F.  Plaintiff's constitutional claims against Councilmember Sawant are barred by immunity doctrine................................................. 19

G.  The City may not be held liable under 42 U.S.C. § 1983 for the conduct plaintiff alleges, because such conduct was not a matter of custom or policy......................................................................... 23

V.  Conclusion ............................................................................................... 24

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adickes v. Kress & Co.*,
   398 U.S. 144 (1970).................................................................................. 14

*Armendariz v. Penman*,
   75 F.3d 1311, 1328 (9th Cir. 1996) ........................................................... 19

*Aronson v. Dog Eat Dog Films, Inc.*,
   738 F. Supp.2d 1104 (W.D. Wash. 2010)...........................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................ 4, 5, 6, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................ 1, 4, 5, 18

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998)................................................................................ 19, 20

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978)................................................................................... 19

*Cawley-Hermann v. Meredith Corp.*,
   654 F. Supp.2d 1264 (W.D. Wash. 2009)................................................... 11

*Chapman v. Houston Welfare Rights Org.*,
   441 U.S. 600 (1979)................................................................................... 23

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ......................................................................... 1

*Collier v. City of Tacoma*,
   121 Wn.2d 737, 854 P.2d 1046 (1993)......................................................... 9

*Crown Point Dev., Inc. v. City of Sun Valley*,
   506 F.3d 851, 852–53 (9th Cir. 2007) ........................................................ 19

*Dent v. Cox Comm. Las Vegas, Inc.*,
   502 F.3d 1141 (9th Cir. 2007) ..................................................................... 2

*Dryer v. National Football League*,
   55 F. Supp.3d 1181, 1198–99 (D. Minn. 2014) ......................................... 11

*F.C.C. v. Beach Comm., Inc.*,
  508 U.S. 307 (1993)..................................................................................................18

*Fed. Deposit Ins. Corp. v. Henderson*,
  940 F.2d 465 (9th Cir. 1991) ................................................................................21

*The Fishing Co. of Alaska v. United States*,
  195 F. Supp.2d 1239 (W.D. Wash. 2002).............................................................19

*Freeman v. City of Santa Ana*,
  68 F.3d 1180 (9th Cir. 1995) .................................................................................19

*Gerow v. Washington*,
  383 Fed. Appx. 677 (9th Cir. 2010) (unpublished opinion) .............................20, 21

*Havsy v. Flynn*,
  88 Wn. App. 514, 945 P.2d 221 (1997) ................................................................5, 6

*IMS Health Inc. v. Sorrell*,
  630 F.3d 263 (2d Cir. 2010)...................................................................................12

*Jett v. Dallas Indep. Sch. Dist.*,
  491 U.S. 701 (1989).............................................................................................23, 24

*Johnson v. Barker*,
  799 F.2d 1396 (9th Cir. 1986) ...............................................................................14

*Joplin Enters. v. Allen*,
  795 F. Supp. 349 (W.D. Wash. 1992).................................................................10, 12

*Kaahumanu v. Cty. of Maui*,
  315 F.3d 1215 (9th Cir. 2003) ...............................................................................20

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
  131 Wn.2d 133, 930 P.2d 288 (1997)......................................................................5

*LKS Enter., LLC v. City of Silverton*,
  No. 6:16-cv-00785-MC, 2017 WL 890085 (D. Or. Mar. 6, 2017)...........................18

*Lyon v. Chase Bank USA, N.A.*,
  656 F.3d 877 (9th Cir. 2011) ...................................................................................1

*Mann Law Group v. Digi-Net Tech., Inc.*,
  No. C13-59RAJ, 2013 WL 3754808 (W.D. Wash. Jul. 15, 2013) ..........................5, 6

*Mark v. Seattle Times*,
  96 Wn.2d 473, 635 P.2d 1081 (1981) ....................................................................10

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - iv
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

*Marrero v. City of Hialeah,*
   625 F.2d 499 (5th Cir. 1980) ................................................................................ 14

*McGlinchy v. Shell Chem. Co.,*
   845 F.2d 802 (9th Cir. 1988) .................................................................................. 4

*Melville v. Bank of New York Mellon Corp.,*
   No. 2:17-CV-30-RMP, 2017 WL 4185469 (E.D. Wash. Sep. 21, 2017) ................... 7

*Menotti v. City of Seattle,*
   409 F.3d 1113 (9th Cir. 2005) .............................................................................. 23

*Miller v. Wyatt,*
   457 S.W.3d 405 (Tenn. Ct. App. 2014) ................................................................. 20

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) .............................................................................................. 22

*Mitsuoka v. Fumoto Eng'g of Am., Inc.,*
   189 Wn. App. 1041, 2015 WL 5012929 (Wash. Ct. App. Aug. 24, 2015) .................. 5

*Monell v. Dep't of Soc. Servs. of N.Y.,*
   436 U.S. 658 (1978) ......................................................................................... 23, 24

*N. Pacifica LLC v. City of Pacifica,*
   526 F.3d 478 (9th Cir. 2008) .......................................................................... 17, 18

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
   724 F.3d 1268 (9th Cir. 2013) .............................................................................. 12

*Ooley v. Citrus Heights Police Dept.,*
   603 Fed. Appx. 628 (9th Cir. 2015) (unpublished opinion) ............................... 15, 16

*Osiris v. Whitehall,*
   877 A.2d 560 (Pa. Cmwlth. 2005) ........................................................................ 20

*Paul v. Davis,*
   424 U.S. 693 (1976).....................................................................................*passim*

*Pleas v. Seattle,*
   112 Wn.2d 794, 804, 774 P.2d 1158 (1989)............................................................. 6

*Plumbers and Steamfitters Union Local 598 v. Washington Pub. Power Supply Sys.,*
   44 Wn. App. 906, 724 P.2d 1030 (1986) ............................................................. 5, 6

*Portman v. Cty. of Santa Clara,*
   995 F.2d 898 (9th Cir. 1993) ................................................................................ 14

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

*Reid v. Pierce Cty.*,
   136 Wn.2d 195, 961 P.2d 333 (1998) .................................................................. 10

*Roe v. Wade*,
   410 U.S. 113 (1973) .............................................................................................. 16

*San Juan County v. No New Gas Tax*,
   160 Wn.2d 141, 157 P.3d 831 (2007) ................................................................... 9

*Schrader v. Clark Cty., Wash.*,
   No. C09-5255RBL, 2009 WL 5216983 (W.D. Wash. Dec. 30, 2009) ................... 18

*Siegert v. Gilly*,
   500 U.S. 226 (1991) .............................................................................................. 22

*Sisley v. Seattle School Dist. No. 1*,
   171 Wn. App. 227, 286 P.3d 974 (2012) ............................................................. 18

*Siu Man Wu v. Pearce*,
   No. C11–0860RSL, 2012 WL 1463307 (W.D. Wash. Apr. 27, 2012) ..................... 5

*Tacoma Auto Mall v. Nissan N. Am., Inc.*,
   169 Wn. App. 111, 279 P.3d 487 (2012) ............................................................... 5

*Tenney v. Brandhove*,
   341 U.S. 367 (1951) .............................................................................................. 20

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) .............................................................................................. 18

*Virgil v. Time, Inc.*,
   527 F.2d 1122 (9th Cir. 1975) ......................................................................... 9, 11

*WMX Tech., Inc. v. Miller*,
   197 F.3d 367 (9th Cir. 1999) ......................................................................... 14, 15

**Statutes**

42 U.S.C. § 1983 .................................................................................................... *passim*

Chapter 63.60 RCW ............................................................................................... *passim*

Ordinance 125054 ................................................................................... 2, 6, 21, 24

RCW 42.17.020 ............................................................................................................. 9

RCW 63.60.010 ................................................................................................... 13, 15

RCW 63.60.050 ........................................................................................ 7, 8

RCW 63.60.070 ..................................................................................... 3, 8, 9

SEATTLE MUNICIPAL CODE 1.04.020 ................................................................ 21

TACOMA MUNICIPAL CODE 2.05.275 ................................................................ 9

**Other Authorities**

First Amendment ................................................................................ 12, 13

Fourteenth Amendment ............................................................................ 15

Fed. R. Civ. P. 8(a)(2) ............................................................................... 4

Fed. R. Civ. P 12(b)(6) ........................................................................ 4, 15

Fed. R. Civ. P. 12(c) ....................................................................... 1, 4, 12

Lynne E. Graybeal, *Right of Publicity Laws: Washington*, Practical Law State Q&A
    1-521-4632 (2016) ........................................................................ 11

MERRIAM-WEBSTER, *Satire*, https://www.merriam-webster.com/dictionary/satire
    (last visited Nov. 15, 2017) .............................................................. 9

Restatement of Torts (Second) § 652C (1975) ............................................. 10

Restatement of Torts (Second) § 652D (1975) .............................................. 9

U.S. Constitution ..................................................................................... 12

Washington State Constitution ................................................................. 12

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - vii
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

## I.  Relief Requested

Defendants Kshama Sawant ("Councilmember Sawant") and the City of Seattle (the "City") move under Fed. R. Civ. P. 12(c) for judgment on the pleadings with respect to plaintiff's second, third, eighth, and ninth causes of action. These four claims fail as a matter of law. Plaintiff's remaining claims also lack merit; defendants expect to move for their summary disposition by separate motion.

## II.  Plaintiff's Complaint

Plaintiff filed a complaint in King County Superior Court on September 15, 2017. Plaintiff served Councilmember Sawant on October 1 and the City on October 9, 2017. Defendants removed the case to this Court on October 30 and then filed and served their answer on November 3, 2017. Although defendants have denied many of plaintiff's allegations, for purposes of this motion the facts alleged in the complaint are assumed to be true. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). Still, the Court need not accept "legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (no presumption of truth for legal conclusions).

Plaintiff alleges that he is a private citizen and Seattle resident. Dkt. # 4-1 ("Compl.") ¶ 1.1. Councilmember Sawant is a private citizen, a Seattle resident, and an elected member of the Seattle City Council. Compl. ¶ 1.2. The City is a Washington municipal corporation. Compl. ¶ 1.3. According to his complaint, plaintiff is a real estate developer who, for many years, has purchased distressed Seattle properties and has redeveloped them into quality residential apartment buildings and condominiums. Compl. ¶ 1.5. He has also been involved in other business ventures. *Id.*

In the summer of 2015, plaintiff purchased the Charles Street Apartments, a 13-unit apartment building, from someone who had allowed the property to fall into disrepair. Compl. ¶ 1.6. Plaintiff

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1    planned to upgrade and modernize the building. *Id.* The building had just been inspected by an

2    inspector approved by the City, who found no violations, so plaintiff proceeded to closing. Compl.

3    ¶ 1.7. But then the City, egged on by Councilmember Sawant, sent "a small army of inspectors" to

4    perform a new inspection of the apartment building, using different standards. Compl. ¶ 1.8. That

5    inspection, according to plaintiff, "resulted in 255 trumped-up 'violations.'" *Id.* The City did not

6    conduct similar inspections on other landlords, nor did Councilmember Sawant suggest that it do so.

7    Compl. ¶ 1.9.

8        Councilmember Sawant publicized the 255 violations found at the Charles Street Apartments,

9    including in a solicitation for campaign contributions distributed on October 9, 2015. Compl. ¶ 1.10.

10   Councilmember Sawant's statements about the violations found at the Charles Street Apartments

11   received widespread attention. *Id.* Around the same time, Councilmember Sawant "began referring to

12   Carl Haglund as a 'slumlord' and a 'notorious slumlord,'" despite not having done what plaintiff

13   terms "an adequate investigation." Compl. ¶ 1.11. Councilmember Sawant also distributed a

14   campaign solicitation that featured a picture of a rat with a name tag reading "Carl Haglund" and

15   captioned "Slumlord." *Id.* This, too, attracted widespread attention. *Id.*

16       Councilmember Sawant proposed a rent-control ordinance and dubbed it the "Carl Haglund

17   Law." Compl. ¶ 1.12. This measure was eventually adopted as Ordinance 125054.[1] *Id.* The proposed

18   ordinance and its nickname received widespread publicity. *Id.* Other City officials also referred to

19   Ordinance 125054 as the "Carl Haglund Law" and referred to plaintiff as a slumlord, and those

20   references appeared on the City's official website. Compl. ¶ 1.13. Many news reporters and others

21   picked up these references and repeated them. *Id.*

---

22   [1] Ordinance 125054 is attached as Exhibit A. The Court may take judicial notice of adopted ordinances. Fed. R. Evid.

23   201(b)(2). Because Ordinance 125054 is cited in the complaint, it may be considered without converting this motion into one for summary judgment. *See Dent v. Cox Comm. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 2
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

As a result of defendants' conduct, plaintiff alleges that he "has had his name, identity and reputation misappropriated and sullied"; that he has "been forced to suffer public ridicule and ostracization"; and that he has "suffered humiliation and severe emotional distress." Compl. ¶ 1.14. No public official stood up to Councilmember Sawant or defended plaintiff. *Id.* Plaintiff gave notice of his tort claim, but the City refused to accept it or to "correct the defamatory statements." Compl. ¶ 1.15, Ex. B.

### III.    Principal Issues

A.    A claim for tortious interference with business expectancy requires the plaintiff to plead and prove a valid business expectancy, the defendant's knowledge of that expectancy, intentional interference causing termination of the expectancy, improper motive or means, and resultant damages. Where plaintiff does not allege any specific business expectancy known to the defendants, does his tortious interference claim (second claim for relief) fail as a matter of law?

B.    Consistent with the First Amendment, RCW 63.60.070 provides that consent to use an individual's name is not required for statements regarding political, newsworthy, or public-interest matters. Inasmuch as these exceptions all apply to the facts plaintiff alleges, does his claim for misappropriation of name and identity (third claim for relief) fail to state a claim upon which relief may be granted?

C.    Plaintiff's due process claim rests upon a supposed property right in the use of his name and identity that chapter 63.60 RCW establishes. If no such right exists, does his derivative due process claim (ninth claim for relief) also fail?

D.    Plaintiff is not a member of a protected class, nor does he raise any fundamental right that is subject to special solicitude under the Fourteenth Amendment. Does he fail to establish a viable equal protection claim (eighth claim for relief)?

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 3
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

E.      A public official enjoys absolute immunity under Section 1983 for legislative acts as well as qualified immunity unless she knows that she is violating a clearly established constitutional right. Where Councilmember Sawant was acting legislatively and could not have known that she was violating any constitutional right, still less a clearly established one, must plaintiff's Section 1983 claims against her be dismissed?

F.      Plaintiff does not and cannot allege that the City has any "policy" or "custom" of identifying slumlords and naming ordinances after them. In such circumstances, must plaintiff's Section 1983 claims against the City be dismissed?

## IV.     Argument

### A. Legal Standard.

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a defendant challenges the adequacy of a complaint under Rule 12(c) based on the failure to state a claim, the Court's review is the same as if the motion had been filed under Rule 12(b)(6). *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "[A]llegations [that] are conclusory" are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which "must be supported by factual allegations." *Id.* at 678–79.

The plaintiff's allegations must also "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Therefore, a court may consider only the plausible, non-conclusory

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

allegations in the complaint. The court must, at the same time, consider "any 'obvious alternative explanation' for defendant's conduct based on the court's 'judicial experience and common sense.'" *Siu Man Wu v. Pearce*, No. C11–0860RSL, 2012 WL 1463307, at *3 (W.D. Wash. Apr. 27, 2012) (Lasnik, J.) (quoting *Twombly*, 550 U.S. at 567, and *Iqbal*, 556 U.S. at 679).

**B. Plaintiff's second claim for relief fails to allege facts establishing a right to recover for tortious interference.**

The tort of wrongful interference with a contractual relationship or business expectancy has five elements: (1) the existence of a valid relationship or expectancy; (2) knowledge of that relationship or expectancy by the defendant; (3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; (4) interference by the defendant for an improper purpose or using improper means; and (5) resultant damages. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). To survive a motion to dismiss, a plaintiff must allege a set of facts that plausibly establishes each element of a tortious interference claim.[2] Even if all five elements are present, "interference is justified as a matter of law if the interferer has engaged in the exercise of an absolute right equal or superior to the right which was invaded." *Plumbers and Steamfitters Union Local 598 v. Washington Pub. Power Supply Sys.*, 44 Wn. App. 906, 920, 724 P.2d 1030 (1986); *accord Tacoma Auto Mall v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 133, 279 P.3d 487 (2012).

Plaintiff does not plead a plausible claim of tortious interference. First, plaintiff fails to identify any specific business expectancy with which defendants are alleged to have interfered. Instead, he asserts a vague expectancy "to conduct business in the City of Seattle as a developer and

---

[2] *See, e.g., Havsy v. Flynn*, 88 Wn. App. 514, 520, 945 P.2d 221 (1997) (dismissed for failure to plead facts showing improper purpose or improper means); *Mitsuoka v. Fumoto Eng'g of Am., Inc.*, 189 Wn. App. 1041, 2015 WL 5012929, at *6–7 (Wash. Ct. App. Aug. 24, 2015) (dismissed for failure to plead facts showing a valid contract or business expectancy); *Mann Law Group v. Digi-Net Tech., Inc.*, No. C13-59RAJ, 2013 WL 3754808, at *3–4 (W.D. Wash. Jul. 15, 2013) (dismissed for failure to plead facts showing knowledge, proximate cause, and improper purpose or means).

redeveloper of real property." Compl. ¶ 3.2. Second, plaintiff fails to allege any facts showing that defendants knew about his business expectancy. Instead, he asserts baldly that defendants "knew or should have known of Mr. Haglund's business expectancy." Compl. ¶ 3.3. To claim that defendants "should have known" effectively concedes lack of actual knowledge. Third, plaintiff fails to allege that defendants' interference was intentional. Instead, he alleges that defendants' conduct was a "negligent or intentional interference with Mr. Haglund's business expectancy." Compl. ¶ 3.4. Negligence is insufficient. *See Pleas v. Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989).

Fourth, plaintiff fails to plausibly allege that defendants intentionally interfered with his business expectancy for an improper purpose or using improper means. How could they, when they did not even know what that expectancy was? To be sure, plaintiff alleges in conclusory fashion that defendants' conduct in naming Ordinance 125054 the "Carl Haglund Law" and branding him a slumlord "was done with improper motive or through improper means" (Compl. ¶ 3.5), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678. Fifth, because plaintiff alleges no facts specifying what his business expectancy was or why defendants should be held responsible for frustrating it, plaintiff cannot plausibly allege that defendants' interference was the proximate cause of his damages. *See Pleas*, 112 Wn.2d at 807–09; *Mann Law Group v. Digi-Net Tech., Inc.*, No. C13-59RAJ, 2013 WL 3754808, at *4 (W.D. Wash. Jul. 15, 2013) (Jones, J.).

Far from establishing tortious interference, the conduct plaintiff describes reflects the absolute right—indeed, duty—of public officials to discuss matters that concern the public at large. That absolute right justifies any alleged interference with plaintiff's business expectancy. *See Plumbers and Steamfitters*, 44 Wn. App. at 920; *Havsy v. Flynn*, 88 Wn. App. 514, 519–20, 945 P.2d 221 (1997). Plaintiff's second claim for relief should be dismissed.

**C. Plaintiff's third claim for relief fails to plausibly allege that defendants violated his rights under chapter 63.60 RCW or the common law of privacy.**

    1. <u>Plaintiff fails to allege facts establishing the essential elements of a claim under RCW 63.60.050.</u>

To state a claim for infringement of Washington's statutory right of publicity, a plaintiff must allege facts showing that the defendant

> use[d] or authorize[d] the use of [plaintiff's] name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or . . . disseminate[d] or publishe[d] such advertisements in this state, without written or oral, express or implied consent of the owner of the right . . . .

RCW 63.60.050. Where a plaintiff fails to allege facts establishing that the defendant made an unauthorized use of the plaintiff's name or personal information under chapter 63.60 RCW, the court will dismiss such claims with prejudice. *See, e.g., Melville v. Bank of New York Mellon Corp.*, No. 2:17-CV-30-RMP, 2017 WL 4185469, at *5 (E.D. Wash. Sep. 21, 2017).

Apart from alleging that Councilmember Sawant used Mr. Haglund's name to raise money for her political campaign (*see* Compl. ¶ 4.4 & Ex. A), which is discussed in the next paragraph, plaintiff does not allege any conduct that plausibly falls within the scope of RCW 63.60.050. Plaintiff alleges that defendants named Ordinance 125054 after him and called him a slumlord or notorious slumlord. Compl. ¶¶ 1.11–1.13. But Ordinance 125054 is not entitled "the Carl Haglund Law," and plaintiff's name appears nowhere in the ordinance. *See* Note 1 above and Exhibit A. Simply using plaintiff's name in public debate does not constitute use of his name or likeness on or in "goods, merchandise, or products" sold in Washington. Nor does it constitute use of his name "for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations." *See* RCW 63.60.050. Therefore, defendants' conduct does not violate the anti-merchandising statute that plaintiff invokes.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 7
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

2.  <u>Plaintiff may not bring a claim under chapter 63.60 for the use of his name in a political campaign when that use did not falsely claim an endorsement.</u>

Even if plaintiff's allegation challenging Councilmember Sawant's use of his name "to solicit donations for her political campaign" (Compl. ¶ 4.4) passes scrutiny under RCW 63.60.050, it founders under RCW 63.60.070(2): "This chapter does not apply to the use . . . of an individual's . . . name . . . in . . . any political campaign when the use does not inaccurately claim or state an endorsement by the individual." RCW 63.60.070(2)(b). No one could read Councilmember Sawant's campaign solicitation (Compl. Ex. A) to suggest that Mr. Haglund was endorsing her re-election. Quite the opposite: the two were obvious antagonists. In short, the right to control the use one's name under chapter 63.60 RCW, though central to plaintiff's claims in this case, is expressly inapplicable to the conduct he alleges.

3.  <u>Plaintiff's claim under chapter 63.60 RCW is also barred by the exception covering the use of one's name in connection with matters of political, newsworthy, or public interest, including criticism and satire.</u>

Even if plaintiff's claim were not already barred by the language of RCW 63.60.050 and RCW 63.60.070(2)(b), it would fail under RCW 63.60.070(1):

> For purposes of RCW 63.60.050, the use of a name . . . in connection with matters of cultural, historical, ***political***, religious, educational, ***newsworthy***, or ***public interest***, including, without limitation, ***comment***, ***criticism***, ***satire***, and ***parody*** relating thereto, shall not constitute a use for which consent is required under this chapter.

RCW 63.60.070(1) (emphasis added). As this provision recognizes, the right to limit the unconsented use of one's name must itself be limited to avoid muzzling public debate. RCW 63.60.070(1) wholly forecloses plaintiff's claim under chapter 63.60 RCW. *See Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp.2d 1104, 1113–14 (W.D. Wash. 2010) (Strombom, J.).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 8
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1   Plaintiff's own allegations establish that defendants used Mr. Haglund's name in

2   connection with matters that were political,[3] newsworthy,[4] and of substantial public interest.

3   According to the plaintiff, Councilmember Sawant used his name (1) to "publicize[] the 255

4   violations found at the Charles Street building" (Compl. ¶ 1.10); (2) to bring publicity to "her

5   proposed rent control ordinance" (Compl. ¶ 1.12); and (3) to "solicit donations for her political

6   campaign" (Compl. ¶ 4.4). These are all political matters. Indeed, plaintiff nowhere alleges that

7   Councilmember Sawant used his name except for political reasons. Plaintiff also alleges that

8   defendants' statements about him were "widely distributed publically [*sic*—publicly] to a large

9   number of people and news reporters, and . . . redistributed repeatedly by a large number of people

10  through news accounts and via the internet." Compl. ¶¶ 1.10–1.13. Plaintiff's complaint thereby

11  establishes that defendants' statements about him were made in connection with matters that were

12  newsworthy and of public interest. This concession vitiates plaintiff's claim under chapter 63.60.

13  Furthermore, Councilmember Sawant's references to plaintiff when advocating on behalf

14  of Ordinance 125054 represent satirical uses of his name. Calling plaintiff a "slumlord" or

15  "notorious slumlord" and featuring a picture of a rat with a "Carl Haglund" name tag is also satire.[5]

16  Compl. ¶¶ 1.11–1.13 & Ex. A. This lawsuit is based entirely on defendants' criticisms of Mr.

17  Haglund. That defendants' use of plaintiff's name was critical rather than laudatory renders

18  defendants' actions exempt from liability under RCW 63.60.070(1).

19  [3] Washington law defines "political advertising" as communications "used for the purpose of appealing, directly or

20  indirectly, for votes or for financial or other support in any election campaign." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 149 n.3, 157 P.3d 831 (2007) (quoting RCW 42.17.020(37)). Political signs relate "to the nomination or election of any individual for a public political office or advoc[e] any measure to be voted on . . . ." *Collier v. City*

21  *of Tacoma*, 121 Wn.2d 737, 742, 854 P.2d 1046 (1993) (quoting TACOMA MUNICIPAL CODE 2.05.275).

    [4] Something is "newsworthy" if it is of legitimate concern to the public. *Virgil v. Time, Inc.*, 527 F.2d 1122, 1128–29
22  (9th Cir. 1975) (citing Restatement (Second) of Torts § 652D (1975)) (holding liability for an invasion of privacy tort may be imposed only if the publicized matter "is of a kind which . . . is not of legitimate concern to the public.").

23  [5] Satire is defined as "a literary work holding up human vices and follies to ridicule or scorn." MERRIAM-WEBSTER, *Satire*, https://www.merriam-webster.com/dictionary/satire (last visited Nov. 15, 2017).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 9
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

4.  Plaintiff fails to allege facts establishing a plausible invasion of any common-law right
of publicity or privacy through misappropriation.

In addition to invoking chapter 63.60 RCW, plaintiff claims that defendants are liable under

Washington common law "for the invasion of Mr. Haglund's privacy through misappropriation of

his name and identity." Compl. ¶ 4.2. The Court need not accept this legal conclusion, nor should

it. Washington has not recognized a common-law right of publicity. *See Joplin Enters. v. Allen*,

795 F. Supp. 349, 351 (W.D. Wash. 1992) (Coughenour, J.). Although Washington courts do

recognize four types of invasion-of-privacy torts, including a claim of "misappropriation of a

persona,"[6] plaintiff's allegations fail to establish such a claim.

Restatement of Torts (Second) § 652C (1975) states the common-law rule: "One who

appropriates to his own use or benefit the name or likeness of another is subject to liability to the

other for invasion of his privacy." *See Reid v. Pierce Cty.*, 136 Wn.2d 195, 205–07, 961 P.2d 333

(1998) (citing Restatement (Second) § 652D for the rule governing publicity given to private

facts). Comment *c* to Section 652C explains why Mr. Haglund may not claim appropriation here:

Liability exists only if the defendant has "appropriated to his own use or benefit the reputation,

prestige, social or commercial standing, public interest or other values of the plaintiff's name or

likeness." Plaintiff does not allege that his name had reputation, prestige, or public interest on

which the defendants sought to capitalize. Indeed, he alleges the opposite: that he was not well

known until the defendants undertook to criticize him.

Comment *d* to Section 652C reinforces the conclusion that plaintiff has failed to allege a

plausible case of common-law misappropriation. It states:

The value of the plaintiff's name is not appropriated . . . by reference to it in
connection with legitimate mention of his public activities . . . . ***No one has the right***

---

[6] *See Aronson*, 738 F. Supp.2d at 1113; *Mark v. Seattle Times*, 96 Wn.2d 473, 497, 635 P.2d 1081 (1981).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 10
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

> *to object merely because his name or his appearance is brought before the public,*
> since neither is in any way a private matter and both are open to public observation.
> It is only when the publicity is given for the purpose of appropriating to the
> defendant's benefit the commercial or other values associated with the name or the
> likeness that the right of privacy is invaded. [Emphasis added.][7]

Claims for common-law misappropriation are rare in Washington, which is unsurprising given the statutory remedy in chapter 63.60 RCW.[8] But courts hold that a common-law claim for misappropriating one's persona—like the statutory claim—fails if the publication relates to matters that are in the public interest. *See Aronson*, 738 F. Supp.2d at 1113 ("Under both the statutory cause of action and the common law, there is no cause of action for the publication of matters in the public interest."); *see also Virgil v. Time, Inc.*, 527 F.2d 1122, 1128–29 (9th Cir. 1975) (liability for invasion of privacy may be imposed only if the publicized matter "is of a kind which . . . is not of legitimate concern to the public."); *Dryer v. National Football League*, 55 F. Supp.3d 1181, 1198–99 (D. Minn. 2014) (discussing the "newsworthy" defense under California, Texas, Minnesota, and New York laws and granting summary judgment to defendants).

Plaintiff's allegations establish that defendants used his name in connection with matters of great public interest: hundreds of housing violations found in a 13-unit apartment building, and the city council's consideration of a new ordinance limiting the ability of landlords to raise the rent on apartments with uncorrected housing violations. Compl. ¶¶ 1.10–1.13. As plaintiff emphasizes, defendants' statements were widely reported in the news media. *See* Compl. ¶¶ 1.10–1.13, 6.5. The *Aronson* court explains:

> The use of a plaintiff's identity is not actionable where the publication relates to
> matters of the public interest, which rests on the right of the public to know and the
> freedom of the press to tell it. . . . . It is only when plaintiff's identity is used

---

[7] *See Cawley-Hermann v. Meredith Corp.*, 654 F. Supp.2d 1264, 1266 (W.D. Wash. 2009) ("Neither Plaintiff's name nor image are intimate details of her private life") (Bryan, J.).

[8] Lynne E. Graybeal, *Right of Publicity Laws: Washington*, Practical Law State Q&A 1-521-4632 (2016).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 11
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1

without consent to promote an unrelated product of defendant that the defense becomes unavailable.

2

3

738 F. Supp.2d at 1113. In short, plaintiff's complaint fails to allege any facts establishing a viable

common-law claim for invasion of privacy through misappropriation of his name and identity.

4

5.   The First Amendment protects robust public debate about matters of public interest.

5

In addition to plaintiff's failure to allege the essential elements of a claim under chapter

6

63.60 RCW or the common law, defendants' conduct is protected by the First Amendment. "Under

7

the First Amendment, a cause of action for misappropriation of another's name and likeness may

8

not be maintained against expressive works, whether factual or fictional." *Aronson*, 738 F. Supp.2d

9

at 1113; *see also Joplin*, 795 F. Supp. at 351–52 (granting defendant's Rule 12(c) motion to

10

dismiss plaintiff's right-of-publicity claim where defendant used plaintiff's likeness in a theatrical

11

play). As *Aronson* also holds, use of a plaintiff's identity is not actionable where statements relate

12

to matters of the public interest. 738 F. Supp.2d at 1113–14. In *Joplin*, the district court noted in

13

dicta that because the Washington State Constitution places an even higher value on free speech

14

than the U.S. Constitution, the plaintiff could not have asserted a cognizable right-of-publicity

15

claim under Washington law.[9] *Joplin*, 795 F. Supp. at 351.

16

The First Amendment protects the use of publicly available data, among other things. *In re*

17

*NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1288 (9th Cir. 2013)

18

("An athlete's right of publicity simply does not encompass publicly available statistical data.");

19

*IMS Health Inc. v. Sorrell*, 630 F.3d 263, 271–72 (2d Cir. 2010) ("The First Amendment protects

20

even dry information, devoid of advocacy, political relevance, or artistic expression.") (internal

21

citations omitted).

22

23

---

[9] In *Joplin*, the court ultimately applied California law under Washington's choice-of-law rules. 795 F. Supp. at 351.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 12
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Even if plaintiff could allege facts sufficient to establish a plausible right-of-publicity claim under chapter 63.60 or a plausible right-of-privacy claim under the common law, defendants' conduct would remain protected by the First Amendment. First, the statements about which plaintiff complains are all "expressive works," *see* Compl. ¶¶ 1.11–1.13, Ex. A, and that is true even if they are "fictional." *See Aronson*, 738 F. Supp.2d at 1113. Second, defendants cannot be held liable for statements concerning matters of public interest,[10] because such statements are entitled to First Amendment protection. *Id.* Third, defendants' statements were based on publicly available data about plaintiff, as they concerned plaintiff's maintenance of his apartment building and his attempt to raise the rent despite a host of building-code violations. Compl. ¶ 1.10. This information is available in the public record. Because defendants' use of plaintiff's name involved expressive works, addressed a matter of public interest, and was based on publicly available data, plaintiff's third claim for relief is barred by the First Amendment.

**D.  Plaintiff's ninth claim for relief fails to adequately allege that defendants deprived him of any protected interest without due process of law.**

    1.  Plaintiff does not allege any recognizable property or liberty interest that is protected by the due process clause of the Fourteenth Amendment.

Plaintiff asserts that RCW 63.60.010 gives him a "property right in the use of his name and identity" and that this entitles him to due process of law under the Fourteenth Amendment "before the government, or anyone cloaked with governmental authority, may deprive" him of his name and identity. Compl. ¶ 10.3. Quite aside from the fact that no one has deprived plaintiff of his name or identity—he remains known as Carl Haglund, as he was before the events described in the

---

[10] As established in Part IV.C.3 above, plaintiff admits that defendants' statements about him were matters of public interest. He alleges that they were "widely distributed publically [*sic*—publicly] to a large number of people and news reporters, and . . . redistributed repeatedly by a large number of people through news accounts and via the internet." Compl. ¶ 1.10–1.13.

1   complaint—plaintiff fails to allege facts establishing that he was denied any property or liberty

2   interest vouchsafed to him by state law and therefore protected by the Fourteenth Amendment.

3          To state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege (1)

4   a property or liberty interest protected by the Constitution, (2) a deprivation of that interest under

5   the color of law, and (3) the lack of process. *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904

6   (9th Cir. 1993); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 150 (1970). The due process clause

7   of the Fourteenth Amendment protects "property" or "liberty" interests only if they attain

8   constitutional status by being initially recognized and protected by state law and then upheld by the

9   U.S. Supreme Court. *Paul v. Davis*, 424 U.S. 693, 710–11 (1976). The Fourteenth Amendment is

10  not "a font of tort law to be superimposed upon whatever systems may already be administered by

11  the States." *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986) (citing *Paul*, 424 U.S. at 701).

12         In *Paul*, the Court held that an interest in reputation alone is quite different from the

13  "liberty" or "property" interests protected under the Fourteenth Amendment. *Paul*, 424 U.S. at

14  711–12. Such a reputational interest is simply one of many that a state may protect against injury

15  by virtue of its tort law. *Id.* Concluding that an injury to one's reputation by itself was not

16  protected by the Constitution, the Court required that, in addition to the stigma inflicted on the

17  plaintiff's reputation, a plaintiff must allege a distinct injury that infringes upon a previously

18  recognized right. *Id.* This requirement of a distinct injury to a recognized right has come to be

19  known as the "stigma-plus" test. *See WMX Tech., Inc. v. Miller*, 197 F.3d 367, 373–377 (9th Cir.

20  1999); *Marrero v. City of Hialeah*, 625 F.2d 499, 516 (5th Cir. 1980).

21         To state a due process claim, a plaintiff must also allege facts showing that the government

22  was the direct cause of the plaintiff's injury. *Ooley v. Citrus Heights Police Dept.*, 603 Fed. Appx.

23  628, 629 (9th Cir. 2015) (unpublished opinion) ("[T]he reactions of third parties to remarks made

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 14
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

by the government do not constitute state action."). In *Ooley*, the court held that the government's defamatory conduct, which led to an alleged campaign of neighborhood harassment against plaintiff, did not give rise to liability. *Id*. The court affirmed the district court's dismissal of plaintiff's due process claims. *Id*.; *see* Fed. R. Civ. P. 12(b)(6).

Here, plaintiff has not stated a cognizable due process claim under Section 1983. At most, he alleges facts establishing reputational injury. Plaintiff's complaint lacks the "plus" component of the "stigma-plus" test. *See WMX Tech.*, 197 F.3d at 376-77; *Paul*, 424 U.S. at 711–12.

In an effort to surmount this hurdle, plaintiff claims that the due process clause of the Fourteenth Amendment entitles him to relief because defendants misappropriated his name and identity. Compl. ¶ 10.4. As evidence of misappropriation, he points to the following conduct by the defendants: (1) referring to plaintiff as a slumlord or notorious slumlord, and (2) stating that Ordinance 125054 was really "a Carl Haglund law." *Id*. He asserts that an infringement of his rights under chapter 63.60 RCW "is a sufficient property right to trigger the right of due process of law . . . ." Compl. ¶ 10.3. In other words, plaintiff tries to argue that defendants' allegedly defamatory statements about him amount to something more than an injury to his reputation, because Washington recognizes the right of publicity as a "property" right. RCW 63.60.010.

Plaintiff's artful pleading fails for at least three reasons. First, even if this Court were to find that a right of publicity under chapter 63.60 RCW is a "property" right entitled to Fourteenth Amendment protection, such a ruling would not help plaintiff. As established in Part IV.C above, plaintiff has not alleged and cannot allege facts establishing that defendants violated his "property" rights under chapter 63.60. Second, in asserting his due process claim, plaintiff merely re-alleges defendants' name-calling. He fails to allege any distinct injury in addition to the stigma inflicted on his reputation (i.e., the "plus" of the "stigma-plus" test). *See WMX Tech.*, 197 F.3d at 376-77; *Paul*,

424 U.S. at 711–12. Third, plaintiff fails to allege that the injuries he claims to have suffered were directly caused by defendants. Instead, he alleges that defendants' "naming" Ordinance 125054 after him[11] and referring to him as a slumlord led others to shun him. He alleges that this conduct resulted in his being "forced to suffer public ridicule and ostracization, in both his personal life and his business endeavors." Compl. ¶ 1.14. These injuries were not directly caused by defendants; rather, they were caused by third parties. Defendants cannot be held liable under 42 U.S.C. § 1983 for injuries that were caused by others. *See Ooley*, 603 Fed. Appx. at 629. Thus, plaintiff fails to state any facts establishing a plausible due process claim.

 2.  Plaintiff's alleged privacy interest is not guaranteed by the due process clause of the Fourteenth Amendment.

Plaintiff's claim that defendants violated his due process rights "by misappropriating his name and identity" (Compl. ¶ 10.4) may be intended to invoke the Constitution directly, not just chapter 63.60 RCW. If so, plaintiff's claim is foreclosed by direct U.S. Supreme Court precedent.

The due process clause does not specifically guarantee a right of privacy. But the Supreme Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees that impose limits upon government power. *Paul*, 424 U.S. at 712–13 (citing *Roe v. Wade*, 410 U.S. 113, 152–153 (1973)). The Court in *Roe* concluded that the personal rights found in this guarantee of personal privacy were limited to "fundamental" rights or those "implicit in the concept of ordered liberty." *Paul*, 424 U.S. at 713. These fundamental privacy rights have been found to exist in matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.*

A so-called right-to-privacy claim involving the unauthorized publication of one's name is not protected by the Fourteenth Amendment. *Id.* (rejecting plaintiff's claim that the state's

---

[11] Because the ordinance does not name Mr. Haglund, plaintiff presumably refers to statements made in support of it.

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

disclosure of his arrest on a shoplifting charge invaded a constitutionally protected right). The Court in *Paul* reasoned that the plaintiff's claim was not based upon any challenge to the state's ability to restrict his freedom in a sphere thought to be private, but instead was based on the idea that the state cannot publish something available in the public record, such as an arrest. *Id.*

In claiming that defendants violated his due process rights when they "misappropriat[ed] his name and identity," a type of privacy tort, plaintiff appears to ask this Court to recognize the misappropriation of one's name as falling within the "zone of privacy" that is protected by the Constitution. Compl. ¶ 10.4. This argument has been explicitly rejected by the U.S. Supreme Court. *See Paul*, 424 U.S. at 713 ("None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner."). Like the defendants in *Paul*, the defendants here did not violate plaintiff's constitutionally protected privacy right by discussing his building code citations, which were in the public record. *See id*; Compl. ¶¶ 1.11–1.13.

### E. Plaintiff's eighth claim for relief fails to adequately allege that defendants violated plaintiff's rights under the equal protection clause.

1. Plaintiff must plead sufficient facts to establish an equal protection claim under a "class of one" theory.

Plaintiff's complaint does not allege that defendants treated Mr. Haglund differently due to his membership in a certain class or group. Rather, plaintiff seeks to raise an equal protection claim based on his being treated uniquely. *See* Compl. ¶¶ 9.4–9.6. A plaintiff who does not allege membership in a class must plead sufficient facts to prevail under a "class of one" theory. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the City intentionally, and without rational basis,

1    treated the plaintiff differently from others similarly situated." *N. Pacifica*, 526 F.3d at 486; *see*

2    *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff completely fails this test.

3        2.    Plaintiff does not allege any facts establishing that defendants treated similarly situated
              landlords differently or that they acted irrationally.

4        Plaintiff fails to plausibly allege that defendants treated similarly situated landlords more

5    favorably than plaintiff. Plaintiff provides no details whatever explaining the similarities of other

6    landlords—e.g., whether any other Seattle landlord has ever been found to have over 200 housing

7    violations in a 13-unit apartment building.[12] He also fails to identify any instances in which

8    defendants treated similarly situated landlords more favorably than he was treated. *See Schrader v.*

9    *Clark Cty., Wash.*, No. C09-5255RBL, 2009 WL 5216983, at *2 (W.D. Wash. Dec. 30, 2009)

10   (Leighton, J.). Instead, plaintiff relies on a conclusory allegation that defendants did "not call[] out

11   any of the similarly situated landlords in Seattle." Compl. ¶¶ 9.4–9.6. This falls far short of

12   meeting plaintiff's burden. *See Iqbal*, 556 U.S. at 678 (under *Twombly*, "[t]hreadbare recitals of the

13   elements of a cause of action, supported by mere conclusory statements, do not suffice").

14       Nor does plaintiff allege facts showing the absence of any rational basis to focus on him.

15   *See F.C.C. v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993) ("[A] statutory classification that

16   neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld

17   against equal protection challenge if there is any reasonably conceivable state of facts that could

18   provide a rational basis for the classification."). Plaintiff lacks any good-faith basis to make such

19   an allegation. *See LKS Enter., LLC v. City of Silverton*, No. 6:16-cv-00785-MC, 2017 WL 890085,

20

21   ────────────────
     [12] In *Sisley v. Seattle School Dist. No. 1*, 171 Wn. App. 227, 286 P.3d 974 (2012), the court considered a student
     newspaper article about "infamous landlords Drake and Hugh Sisley," who were reported to have accumulated "48
22   housing and building maintenance code violations" over 15 years. *Id.* at 228–29. The court held that 11 other news
     articles addressing "the deplorable conditions of the Sisley brothers' rental properties, referring to the brothers as
     among Seattle's worst 'slumlords' and reporting on the numerous housing code violations on their properties" (*id.* at
23   230) were relevant and admissible evidence. *See id.* at 231–33.

at *7 (D. Or. Mar. 6, 2017) (slip copy) ("[M]aking a builder strictly comply with the building code's minimal requirements is, as a matter of law, rational.").[13] Selective enforcement of valid laws does not make the government's action irrational. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187–88 (9th Cir. 1995) (rejecting argument that selective enforcement of facially valid ordinance denied equal protection); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("'[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'") (citation omitted).

Plaintiff apparently assumes that different treatment is always irrational or motivated by discrimination. "But this assumption is legally unsound and logically absurd: it would not only validate the 'everyone–else–was–driving–75' defense but create a cause of action for damages on such a claim." *The Fishing Co. of Alaska v. United States*, 195 F. Supp.2d 1239, 1254 (W.D. Wash. 2002) (Zilly, J.). Plaintiff does not allege any facts supporting a plausible equal protection claim.

### F.  Plaintiff's constitutional claims against Councilmember Sawant are barred by immunity doctrine.

Even if plaintiff could allege a plausible constitutional claim, he could not recover against Councilmember Sawant. She is absolutely immune from claims related to legislative acts. In addition, she enjoys qualified immunity with respect to acts as to which no constitutional violation would be readily apparent. Both kinds of immunity apply to the facts that plaintiff alleges.

Absolute immunity. Local legislators are absolutely immune from Section 1983 liability for their legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 48–51 (1998). "Whether an act is

---

[13] *See also Armendariz v. Penman*, 75 F.3d 1311, 1328 (9th Cir. 1996), overruled on other grounds in *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852–53 (9th Cir. 2007) ("The City has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code.").

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

legislative turns on the nature of the act, rather than the motive or intent of the official performing it." *Id.* at 54. Thus, the court must determine whether the actions of councilmembers, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Id.* at 55. In making this determination, the Ninth Circuit considers: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large, (3) whether the act is formally legislative in character, and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. Cty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003).

Legislative immunity extends to conduct constituting an "integral step[] in the legislative process." *Gerow v. Washington*, 383 Fed. Appx. 677, 678 (9th Cir. 2010) (internal quotations omitted) (upholding district court's Rule 12(c) dismissal of plaintiff's federal claims) (unpublished opinion).[14] In *Gerow*, the Ninth Circuit concluded that government officials' conduct—including alleged statements about plaintiff that he claimed were evidence of animus—were integral steps in the legislative process and thus immune from liability. *Gerow*, 383 Fed. Appx. at 678 ("'The claim of an unworthy purpose does not destroy the privilege' of legislative immunity.") (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

Here, as plaintiff must concede, passage of Ordinance 125054 is a legislative act. Ordinance 125054 was not ad hoc, but rather reflects the formulation of City policy. The ordinance is part of the City's multi-pronged approach to address Seattle's housing affordability crisis and promote the health, safety, and welfare of the general public. *See* Ordinance 125054. The ordinance is not

---

[14] *See also Miller v. Wyatt*, 457 S.W.3d 405, 409 (Tenn. Ct. App. 2014) (applying legislative privilege to hold that "remarks made by city council members which [*sic*] relate to matters within the scope of that body's authority" were immune from suit, recognizing the "importance of legislators freely speaking their minds"); *Osiris v. Whitehall*, 877 A.2d 560, 567 (Pa. Cmwlth. 2005) (applying the legislative privilege to hold that councilmember's defamatory statement during council meeting was immune from liability).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 20
No. 2:17-cv-01614-MJP

1   directed at plaintiff alone but applies to all residential landlords in the City. *See id.* The ordinance is

2   also formally legislative in character: it establishes regulations and enforcement provisions, defines

3   enforcement authority, and amends or adds sections of the Housing Code and Seattle Municipal

4   Code. *See id.* Finally, the ordinance bears the traditional hallmarks of legislation: it was adopted by

5   a unanimous vote of City Council after months of discussion and debate, and it was presented to

6   and signed by the Mayor. *See id.*; SEATTLE MUNICIPAL CODE 1.04.020.

7        Councilmember Sawant's statements about plaintiff were "integral steps in the legislative

8   process" and thus are entitled to legislative immunity. *See Gerow*, 383 Fed.Appx. at 678. Ordinance

9   125054 was inspired by the plight of plaintiff's tenants.[15] Councilmember Sawant's alleged section

10  1983 violations—referring to plaintiff as a "notorious slumlord" and referring to Ordinance 125054

11  as the "Carl Haglund" law—occurred as she was conducting the affairs of the City Council.

12  Discussing plaintiff's willingness to raise rents despite his building's severe housing code violations

13  was integral to the process that led to remedial legislation. Because Councilmember Sawant's

14  actions fall within the scope of legislative privilege, her conduct is absolutely immune from suit.

15       <u>Qualified immunity</u>. Even if she were not absolutely immune from Section 1983 liability,

16  Councilmember Sawant would be entitled to qualified immunity. No reasonable government

17  official in her position could have known that publicizing plaintiff's housing violations or calling

18  him a slumlord violated a clearly established constitutional right.

19       Whether a government official is entitled to qualified immunity is purely a question of law

20  for the court to decide. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 477 (9th Cir. 1991)

---

[15] "[T]enants in rental units where Housing and Building Code violations exist can currently be subject to rent increases, as exemplified by the widely reported experience of tenants at the Charles Street Apartments located at 6511 Rainier Avenue South who received notices of large rent increases, some reported to be in excess of 100 percent, shortly before a City inspection found 225 Housing and Building Code violations on the site; and . . . prohibiting rent increases until rental units comply with housing code requirements will encourage landlords to comply with those standards and thereby promote the health, safety, and welfare of the general public[.]" Ordinance 125054, p. 3.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 21
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). This question should be decided at the

2 beginning of the case. *Siegert v. Gilly*, 500 U.S. 226, 231–33 (1991); *see Mitchell*, 472 U.S. at 526

3 (qualified immunity from federal claims encompasses not only immunity from liability, but also

4 immunity from suit). To recover, a plaintiff must allege the violation of a constitutional right that

5 was clearly established when the government official acted. The threshold issue is "whether the

6 plaintiff has asserted a violation of a constitutional right **at all**." *Siegert*, 500 U.S. at 232–33

7 (emphasis added). In this case, as in *Siegert* and *Paul v. Davis*, plaintiff has not asserted a violation

8 of any constitutional right. Although he has alleged that his reputation was harmed, that is

9 insufficient. *Id.* at 234 (no constitutional protection for the interest in reputation). Plaintiff's

10 attempt to bolster his claim for reputational harm by invoking an alleged property right under

11 chapter 63.60 RCW fails as a matter of law. *See* Part IV.C above.

12       Even if a court were to find a constitutional right here, that right was not clearly established

13 in 2015. No decision by the Supreme Court, the Ninth Circuit, or this Court grants such a right.

14 Plaintiff's due process claim has not been recognized by the Supreme Court or by any lower court

15 of which defendants are aware. *See Paul*, 424 U.S. at 711–12. Especially in light of plaintiff's novel

16 legal arguments, one could not expect a reasonable government official in Councilmember

17 Sawant's position to have believed that she was violating plaintiff's clearly established

18 constitutional rights by referring to him as a slumlord or "naming" a remedial ordinance after him.

19 Therefore, even if all of plaintiff's allegations are assumed to be true, Councilmember Sawant is

20 entitled to qualified immunity.

21

22

23

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 22
No. 2:17-cv-01614-MJP

1

**G. The City may not be held liable under 42 U.S.C. § 1983 for the conduct plaintiff alleges, because such conduct was not a matter of custom or policy.**

2

To allege facts establishing a plausible constitutional violation, a plaintiff must establish

3

that a municipality violated the plaintiff's rights pursuant to a municipal "policy" or "custom." *See*

4

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694–95 (1978). "Congress did not intend

5

municipalities to be subject to vicarious liability for the federal constitutional or statutory

6

violations of their employees." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 710 (1989). Because

7

42 U.S.C. § 1983 is the exclusive cause of action related to an alleged violation of the Constitution,

8

plaintiff must satisfy the *Monell* standard to plead a plausible constitutional claim against the City.

9

*See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). That is, plaintiff must

10

allege facts sufficient to show that the City violated his rights pursuant to a "policy" or "custom"

11

that it had adopted. *See Monell*, 436 U.S. at 694–95.

12

There are three ways to show a municipal policy or custom:

13

> (1) [B]y showing a longstanding practice or custom which constitutes the standard
> operating procedure of the local government entity; (2) by showing that the decision-
> making official was, as a matter of state law, a final policymaking authority whose
> edicts or acts may fairly be said to represent official policy in the area of decision; or
> (3) by showing that an official with final policymaking authority either delegated that
> authority to, or ratified the decision of, a subordinate.

14

15

16

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal citations omitted). Plaintiff

17

does not even attempt to make one of these showings. First, he nowhere alleges that the conduct

18

about which he complains was part of a longstanding practice or custom of the City. Instead, he

19

cites Councilmember Sawant's allegedly defamatory statements (Compl. ¶¶ 1.8–1.12) and states

20

that "no public official had the courage to stand-up [*sic*] against Sawant and her collaborators."

21

Compl. ¶1.14. Far from alleging that Councilmember Sawant's allegedly defamatory statements

22

reflect longstanding practice or custom of the City, plaintiff alleges that they were so unusual as to

23

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 23
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

call for intervention by other City officials. Furthermore, although plaintiff makes a conclusory allegation that "[m]any other City officials" referred to Ordinance 125054 as the "Carl Haglund law" (Compl. ¶ 1.14), plaintiff cannot plausibly allege that City officials' use of an unofficial name for Ordinance 125054 constituted a policy, practice, or custom of the City.

Second, plaintiff fails to allege that Councilmember Sawant or other unnamed City officials had final policymaking authority to carry out an allegedly unconstitutional agenda. The closest he comes is alleging that Councilmember Sawant "did not suggest or direct the City to conduct other inspections on other similarly situated landlords in the City of Seattle, nor did the City conduct similar inspections of other similarly situated landlords." *Id.* ¶ 1.9. Plaintiff does not and cannot allege that Councilmember Sawant had final authority to subject either plaintiff's properties or other landlords' properties to additional inspections, because she is not part of the executive branch and does not control the City's Department of Construction and Inspection.

Third, plaintiff does not allege that Councilmember Sawant delegated her authority to, or ratified the decision of, a subordinate who conducted additional building inspections of plaintiff's property. And no such allegation would be plausible. Because plaintiff does not allege facts establishing that the City violated his constitutional rights pursuant to an official policy or custom, as required by *Monell*, the City cannot be held vicariously liable under Section 1983 for the alleged torts committed by Councilmember Sawant. *See Jett*, 491 U.S. at 710.

## V.    Conclusion

Judgment on the pleadings should be entered dismissing plaintiff's second, third, eighth, and ninth causes of action.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 24
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1    DATED this 15th day of November 2017.

2                                    PETER S. HOLMES
                                      Seattle City Attorney
3
                              By:   /s/ Michael Ryan
4                                    Michael Ryan, WSBA# 32091
                                     Assistant City Attorney
5                                    E-mail: Michael.Ryan@seattle.gov

6                                    701 Fifth Avenue, Suite 2050
                                     Seattle, WA 98104
7                                    Phone: (206) 684-8200

8
                                      K&L GATES LLP
9
                              By: /s/ Robert B. Mitchell
10                                   Robert B Mitchell, WSBA #10874
                                     E-mail: rob.mitchell@klgates.com
11
                                     Raina V. Wagner, WSBA #45701
12                                   E-mail: raina.wagner@klgates.com

13                                   925 Fourth Avenue, Suite 2900
                                     Seattle, WA 98104-1158
14                                   Phone: (206) 623-7580

15                                   Attorneys for Defendants

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR                                  PETER S. HOLMES
JUDGMENT ON THE PLEADINGS - 25                          Seattle City Attorney's Office
No. 2:17-cv-01614-MJP                                   701 5th Avenue, Suite 2050
                                                        Seattle, WA 98104-7097
                                                        (206) 684-8200

1

## CERTIFICATE OF SERVICE

2

I, Dawnelle Patterson, declare as follows:

3

I certify under penalty of perjury under the laws of the state of Washington that on

4 November 15, 2017, I sent a true and correct copy of the foregoing document to the following

5 persons as indicated below:

6

| *Attorneys for Plaintiff:* | ☑ By E-mail: |
|---|---|
| Bradley W. Anderson<br>Steve C. Morasch<br>Phillip J. Haberthur<br>LANDERHOLM, P.S.<br>805 Broadway Street, Suite 1000<br>PO Box 1086<br>Vancouver, WA 98666 | brad.andersen@landerholm.com<br>stevem@landerholm.com<br>philh@landerholm.com |
| *Attorney for Plaintiff:* | ☑ By E-mail: |
| Paul E. Fogarty<br>FOGARTY LAW GROUP PLLC<br>705 2nd Avenue, Suite 1050<br>Seattle, WA 98104-1759 | pfogarty@fogartylawgroup.com |

15

16

DATED: November 15, 2017, in Seattle, Washington.

17

18

_____

Dawnelle Patterson

19

20

21

22

23

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 26
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

EXHIBIT A

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1      **CITY OF SEATTLE**

2      ORDINANCE  125054

3         COUNCIL BILL  118678

4
5      AN ORDINANCE relating to tenant protections; establishing regulations and enforcement
6              provisions related to residential rent increases on properties that do not meet basic
7              maintenance standards; transferring primary enforcement authority for all sections of
8              Title 22, Subtitle 2 of the Seattle Municipal Code (Housing Code) to the Director of the
9              Seattle Department of Construction and Inspections; amending the penalty structure for
10            certain violations of the Housing Code; amending Sections 22.202.010, 22.202.050,
11            22.204.090, 22.206.180, 22.206.220, 22.206.280, and 22.206.305 of the Seattle
12            Municipal Code; and adding a new Section 22.202.080.
13
14    WHEREAS, in September 2014 the City Council adopted Resolution 31546, in which the Mayor

15            and Council jointly convened the Seattle Housing Affordability and Livability Agenda

16            (HALA) Advisory Committee to evaluate potential strategies to make Seattle more

17            affordable, equitable, and inclusive; and in particular to promote the development and

18            preservation of affordable housing for residents of the City; and

19    WHEREAS, in July 2015, HALA published its Final Advisory Committee Recommendations

20            and the Mayor published *Housing Seattle: A Roadmap to an Affordable and Livable City*,

21            which outlines a multi-prong approach of bold and innovative solutions to address

22            Seattle's housing affordability crisis; and

23    WHEREAS, in October 2015 the Council adopted Resolution 31622, which declared the

24            Council's intent to expeditiously consider strategies recommended by the HALA

25            Advisory Committee; and

26    WHEREAS, the HALA Advisory Committee's recommendations include strategies to support

27            and help tenant households; and

Last revised December 1, 2015                      1

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1    WHEREAS, according to residential market surveys conducted by Dupre + Scott, the average

2        market rate rent for one bedroom apartment units in Seattle increased by 35 percent

3        between 2011 and 2016; and

4    WHEREAS, residential property owners may increase rents irrespective of the condition of the

5        housing units they own; and

6    WHEREAS, the Rental Registration and Inspection Ordinance, Chapter 22.214 of the Seattle

7        Municipal Code, establishes a checklist of maintenance standards required for rental

8        housing and requires that all housing units subject to Chapter 22.214 meet the standards

9        established in Sections 22.214.050.L and 22.214.050.M; and

10    WHEREAS, RCW 59.18.060 states "the landlord will at all times during the tenancy keep the

11        premises fit for human habitation, and shall in particular: (1) Maintain the premises to

12        substantially comply with any applicable code, statute, ordinance, or regulations

13        governing their maintenance or operation, which the legislative body enacting the

14        applicable code, statute, ordinance or regulation could enforce as to the premises rented if

15        such condition endangers or impairs the health or safety of the tenant"; and

16    WHEREAS, RCW 59.18.070 provides a process and timelines for a tenant to seek correction of

17        defective conditions in a rental housing unit; and

18    WHEREAS, RCW 59.18.085 provides remedies to tenants who rent dwelling units that are

19        condemned or unlawful to occupy; and

20    WHEREAS, Seattle's housing stock includes renter-occupied units with severe physical

21        problems, including signs of mice and cockroaches, open cracks or holes in the interior,

22        exposed wiring, and other deficiencies that could endanger tenants' health and safety; and

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   WHEREAS, tenants in rental units where Housing and Building Code violations exist can

2   currently be subject to rent increases, as exemplified by the widely reported experience of

3   tenants at the Charles Street Apartments located at 6511 Rainier Avenue South who

4   received notices of large rent increases, some reported to be in excess of 100 percent,

5   shortly before a City inspection found 225 Housing and Building Code violations on the

6   site; and

7   WHEREAS, the Mayor and Council find that prohibiting rent increases until rental units comply

8   with housing code requirements will encourage landlords to comply with those standards

9   and thereby promote the health, safety, and welfare of the general public;

10  NOW, THEREFORE,

11  **BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:**

12  Section 1. Subsection 22.202.010.A of the Seattle Municipal Code, which section was

13  last amended by Ordinance 120302, is amended as follows:

14  **22.202.010 Enforcement authority – Rules((.))**

15  A. Enforcement. The Director is hereby designated the City Official to exercise the

16  powers granted by this ((Code)) Title 22 ((, except that the Chief of Police is authorized to

17  administer and enforce Sections 22.206.180 and 22.206.190 and shall have equal authority with

18  the Director for enforcement of SMC Sections 22.206.140 and 22.206.160 B3. In enforcing SMC

19  Sections 22.106.180 and 22.206.190, the Chief of Police shall encourage any owner(s) and

20  tenant(s) involved to engage in mediation or binding arbitration pursuant to RCW 59.18.315

21  through RCW 59.18.350 of the State Residential Landlord Tenant Act to resolve outstanding

22  disputes between them)). The Chief of Police shall provide assistance to the Director in

23  enforcing Title 22 when requested by the Director.

Last revised December 1, 2015                                           3

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1                                            * * *

2          Section 2.  Section 22.202.050 of the Seattle Municipal Code, last amended by Ordinance

3   122397, is amended as follows:

4   **22.202.050 Housing and Abatement Accounting ((~~Unit.~~)) unit**

5          A restricted accounting unit designated as the "Housing and Abatement Account" is

6   established in the Construction and Land Use Fund from which account the Director is hereby

7   authorized to pay the costs and expenses incurred for the repair, alteration, improvement,

8   vacation and closure, removal or demolition of any building, structure, or other dangerous

9   condition pursuant to the provisions of this ((~~Code~~)) Title 22, or pursuant to any other ordinance

10  administered and enforced by the Director declaring any building, structure or premises to be a

11  public nuisance and ordering the abatement thereof. Money from the following sources shall be

12  paid into the Housing and Abatement Accounting Unit:

13                                           * * *

14         F. Fines and penalties collected pursuant to ((~~subsections A, B, D, E, F, and G of~~

15  ~~Section~~)) Section 22.208.150 and subsections 22.206.280.A, 22.206.280.B, 22.206.280.D,

16  22.206.280.E, and 22.206.280.F ((~~and Section 22.208.150~~)).

17         Section 3.  A new Section 22.202.080 is added to the Seattle Municipal Code as follows:

18  **22.202.080 Documentation of notices**

19         All written notices required by Chapter 22.200 through 22.208 to be provided to or

20  served on tenants by property owners, or on property owners by tenants, shall be documented in

21  such a manner as to confirm the date on which the notice was received. The use of email is

22  allowed for written notices required under Section 22.206.180.

Last revised December 1, 2015                          4

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1         Section 4. Section 22.204.090 of the Seattle Municipal Code, last amended by Ordinance

2 115671, is amended as follows:

3 **22.204.090 "H((.))"**

4         ((A.)) "Habitable room" means space in a building occupied, used, designed, or

5 intended to be used for living, sleeping, eating, or cooking. Bathrooms, toilet compartments,

6 closets, halls, laundry rooms, storage or utility space, and similar areas are not habitable

7 rooms.

8         ((B.)) "Hazard" means a condition that exposes any person to the risk of illness, bodily

9 harm, or loss of or damage to possessions.

10         ((C.)) Historic. See "Building, historic."

11         ((D.)) "Hotel" means a building ((which)) that contains six (((6))) or more guest rooms

12 and is intended for occupancy by transients.

13         ((E.)) "Housekeeping unit" means a housing unit of one (((1))) or more rooms, used for

14 living, sleeping, and cooking and sharing a common bathroom.

15         ((F.)) "Housing costs" means the compensation or fees paid or charged, usually

16 periodically, for the use of any housing unit. For purposes of this Chapter 22.204, housing

17 costs include rent and any periodic or monthly fees for other services such as storage and

18 parking paid to the landlord by the tenant. Housing costs do not include utility charges that are

19 based on usage and that the tenant has agreed in the rental agreement to pay, unless the tenant

20 was not obligated to pay utility charges under the terms of the previous rental agreement.

21         "Housing unit" means any dwelling unit, housekeeping unit, guest room, dormitory, or

22 single room occupancy unit.

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1         Section 5.  Section 22.206.180 of the Seattle Municipal Code, last amended by Ordinance

2 124919, is amended as follows:

3 **22.206.180 Prohibited acts by owners ((:))**

4         ((A.)) Except as otherwise specifically required or allowed by this ((Code)) Title 22 or

5 by the Washington State Residential Landlord-Tenant Act, chapter 59.18 RCW, it is unlawful

6 for any owner to:

7         ((1.)) A. Change or tamper with any lock or locks on a door or doors used by the

8 tenant; or

9         ((2.)) B. Remove any door, window, fuse box, or other equipment, fixtures, or

10 furniture; or

11         ((3.)) C. Request, cause, or allow any gas, electricity, water, or other utility service

12 supplied by the owner to be discontinued; or

13         ((4.)) D. Remove or exclude a tenant from the premises except pursuant to legal

14 process; or

15         ((5.)) E. Evict, increase rent, reduce services, increase the obligations of a tenant, or

16 otherwise impose, threaten, or attempt any punitive measure against a tenant for the reason

17 that the tenant has in good faith reported violations of this ((Code)) Title 22 to the Seattle

18 Department of Construction and Inspections or to the Seattle Police Department, or otherwise

19 asserted, exercised, or attempted to exercise any legal rights granted tenants by law and arising

20 out of the tenant's occupancy of the building; or

21         ((6.)) F. Enter a tenant's housing unit or premises except:

22            ((a.)) 1. At reasonable times with the tenant's consent, after giving the tenant:

1   (($1$)) a. at least two days' notice of intent to enter for the purpose of

2   inspecting the premises, making necessary or agreed repairs, alterations or improvements, or

3   supplying necessary or agreed services; or

4   (($2$)) b. at least one day's notice for the purpose of exhibiting the

5   dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers, or contractors;

6   or

7   ((b.)) 2. In an emergency; or

8   ((c.)) 3. In case of abandonment as defined by state law; or

9   ((7.)) G. Prohibit a tenant or the tenant's authorized agent or agents, if accompanied by

10   the tenant, from engaging in the following activities when related to building affairs or tenant

11   organization:

12   ((a.)) 1. Distributing leaflets in a lobby and other common areas and at or under

13   tenants' doors;

14   ((b.)) 2. Posting information on bulletin boards, provided that tenants comply

15   with all generally applicable rules of the landlord governing the use of such boards. Such rules

16   cannot specifically exclude the posting of information related to tenant organizing activities if

17   the rules permit posting of other types of information by tenants;

18   ((c.)) 3. Initiating contact with tenants;

19   ((d.)) 4. Assisting tenants to participate in tenant organization activities;

20   ((e.)) 5. Holding meetings, including political caucuses or forums for speeches

21   of public officials or candidates for public office, unattended by management, conducted at

22   reasonable times and in an orderly manner on the premises, held in any community rooms or

23   recreation rooms if these rooms are open for the use of the tenants; provided that the tenant

1   complies with all other generally applicable rules of the landlord governing the use of such

2   rooms. Any generally applicable rules must be written and posted in or near such a room. If a

3   community or recreation room is not available, meetings may take place in common areas

4   which include a laundry room, hallway, or lobby; provided all generally applicable rules of the

5   landlord governing such common areas and applicable fire and safety codes are followed; or

6        H. Increase the periodic or monthly housing costs to be charged a tenant by 10 percent

7   or more over the periodic or monthly housing costs charged the same tenant for the same

8   housing unit and the same services for any period or month during the preceding 12-month

9   period without giving the tenant at least 60 days prior written notice of the cost increase. The

10   notice shall describe how the tenant may obtain information about the rights and obligations of

11   tenants and landlords under this Chapter 22.206; or

12        I. Increase the periodic or monthly housing costs to be charged a tenant by less than 10

13   percent over the periodic or monthly housing costs charged the same tenant for the same

14   housing unit and the same services for any period or month during the preceding 12-month

15   period without giving the tenant at least 30 days prior written notice of the cost increase. The

16   notice shall describe how the tenant may obtain information about the rights and obligations of

17   tenants and landlords under this Chapter 22.206; or

18        J. Increase the periodic or monthly housing costs to be charged a tenant by any amount if

19   the Director has determined the housing unit does not comply with the checklist prescribed by

20   subsection 22.214.050.L and the weighted requirements of 22.214.050.M.

21        1. When a tenant is notified of a proposed increase in periodic or monthly

22   housing costs, if the tenant believes the housing unit has defective conditions and does not

23   comply with the checklist prescribed by subsection 22.214.050.L and the weighted

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   requirements of 22.214.050.M, the tenant may notify the owner of the potential application of

2   this Section 22.206.180.J.

3           2. Notification from a tenant to an owner must be in writing, describe the

4   defective conditions, and be sent to the landlord prior to the effective date listed in the notice

5   of housing costs increase the tenant received from the landlord.

6           3. After written notice to the owner has been provided, and before the housing

7   costs increase takes effect, the tenant or owner may request an inspection from the Director.

8           4. Upon inspection, if the Director determines the unit meets the requirements

9   of subsections 22.214.050.L and 22.214.050.M or that the conditions violating subsections

10  22.214.050.L and 22.214.050.M were caused by the tenant, the housing costs increase shall

11  take effect on the date specified in the notice of the housing costs increase.

12          5. If the Director determines that the unit does not comply with the checklist

13  prescribed by subsection 22.214.050.L and the weighted requirements of subsection

14  22.214.050.M, the housing costs increase shall not take effect until the Director determines that

15  the housing unit complies with the checklist and the weighted requirements of subsection

16  22.214.050.M. This determination must occur before the tenant may lawfully refuse payment of

17  the housing cost increase.

18          6. If a tenant pays the increased housing costs prior or subsequent to a

19  determination by the Director that the housing unit does not comply with the checklist and the

20  weighted requirements of subsection 22.214.050.M, the owner shall refund to the tenant the

21  amount by which the housing costs paid exceeded the amount of housing costs otherwise due, or

22  provide a credit in that amount against the tenant's housing costs for the next rental period. The

23  refund or credit shall be prorated to reflect the period that the housing unit was determined to be

Last revised December 1, 2015                           9

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   in compliance with the checklist and the weighted requirements of subsection 22.214.050.M. If

2   the owner elects to provide a refund rather than provide a credit, the refund shall be paid to the

3   tenant before the beginning of the next rental period. When calculating a pro-rata amount to be

4   credited or refunded, a 30-day month shall be used.

5            7. If a tenant denies access to the tenant's housing unit to conduct an inspection,

6   the increase in housing costs shall take effect on the date access to the dwelling unit was denied

7   by the tenant, or on the effective date of the housing costs increase identified in the notice of the

8   housing costs increase, whichever is later.

9            8. The Director shall describe, by rule, SDCI's role when a tenant notifies SDCI

10  that a landlord has given the tenant notice pursuant to RCW 59.12.030 (3) (3 day pay rent or

11  vacate notice) and when the housing cost increase has been lawfully prohibited pursuant to

12  subsection 22.206.180.J.5.

13           ((B. The following rebuttable presumptions shall apply in any proceeding to collect a

14  civil penalty for violation of subsection 22.206.180.A.5.

15           1. Any owner who takes any action listed in subsection 22.206.180.A.5 within

16  90 days after a tenant has in good faith reported violations of this Code (Chapter 22.206) to the

17  Seattle Department of Construction and Inspections or to the Seattle Police Department, or

18  otherwise asserted, exercised or attempted to exercise any legal rights granted tenants by law

19  and arising out of a tenant's occupancy of the building, or within 90 days after any inspection

20  or proceeding by a governmental agency resulting from such legal right asserted, exercised or

21  attempted to be exercised by a tenant, creates a rebuttable presumption affecting the burden of

22  proof that the action was taken for the reason that the tenant had in good faith reported

23  violations of this Code to the Seattle Department of Construction and Inspections or to the

Last revised December 1, 2015                    10

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   ~~Seattle Police Department or otherwise asserted, exercised or attempted to exercise any legal~~

2   ~~rights granted the tenant by law; except that, if at the time an owner gives a notice of~~

3   ~~termination of tenancy pursuant to chapter 59.12 RCW, the tenant is in arrears in rent or in~~

4   ~~breach of any other lease or rental obligation, there is a rebuttable presumption that the~~

5   ~~landlord's action is neither a reprisal nor retaliatory action against the tenant.~~

6   ~~2. A tenant who makes a complaint or report to a governmental authority about~~

7   ~~an owner or owner's property within 90 days after notice of a proposed increase in rent or~~

8   ~~other action in good faith by the owner creates a rebuttable presumption that the complaint or~~

9   ~~report was not made in good faith, unless the complaint or report was that the proposed~~

10  ~~increase in rent or other action was unlawful, in which case no such presumption applies.~~

11  ~~3. The rebuttable presumption under subsection 22.206.180.B.1 shall not apply~~

12  ~~with respect to an increase in rent if the owner, in a notice to the tenant of an increase in rent,~~

13  ~~specifies reasonable grounds for said increase and the notice of said increase does not violate~~

14  ~~subsection 7.24.030.A.))~~

15  Section 6. Subsection 22.206.220.A of the Seattle Municipal Code, which section was

16  last amended by Ordinance 122397, is amended as follows:

17  **22.206.220 Notice of violation((.))**

18  A. Except as otherwise required by law, ((T))the Director is authorized to inspect or

19  otherwise investigate any building, ((or )) premises, or actions of a landlord or tenant

20  ((which)) that the Director has reason to believe may not be in compliance with the standards

21  and requirements of Sections 22.206.010 through ((22.206.170, and Section)) 22.206.200. If

22  the standards and requirements of Sections 22.206.010 through ((22.206.120, Sections

23  22.206.150 through 22.206.170 or of Section)) 22.206.200 have not been met, the Director

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1    may issue a notice of violation to the owner and/or other person responsible for the violation

2    pursuant to this ((section)) Section 22.206.220. The notice of violation shall:

3                          1. Identify each violation of the standards and requirements of this

4    ((Code))Title 22 and the corrective action necessary to bring the building and premises into

5    compliance; and

6                          2. Specify a time for compliance.

7                                            * * *

8            Section 7. Section 22.206.280 of the Seattle Municipal Code, last amended by

9    Ordinance 122855, is amended as follows:

10   **22.206.280 Civil enforcement proceedings and penalties ((.))**

11           In addition to any other remedy that may be available at law or equity, the following are

12   available:

13           A. ((Except for violations of Section 22.206.180, a)) Any person violating or failing to

14   comply with any requirement of this ((Code)) Chapter 22.206 shall be subject to a cumulative

15   civil penalty in an amount not to exceed:

16                          1. ((One Hundred Fifty Dollars ($150.00))) $150 per day for each housing unit

17   in violation, and ((One Hundred Fifty Dollars ($150.00))) $150 per day for violations in the

18   common area or on the premises surrounding the building or structure, from the date the

19   violation begins, for the first ten (((10)) days of noncompliance; and ((Five Hundred Dollars

20   ($500.00))) $500 per day for each housing unit in violation, and ((Five Hundred Dollars

21   ($500.00))) $500 per day for violations in the common area or on the premises surrounding the

22   building or structure, for each day beyond ten (((10)) days of noncompliance until compliance

23   is achieved. In cases where the Director has issued a notice of violation, the violation will be

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1    deemed to begin, for purposes of determining the number of days of violation, on the date

2    compliance is required by the notice of violation. In addition to the per diem penalty, a

3    violation compliance inspection charge equal to the base fee set by Section 22.900B.010 shall

4    be charged for the third inspection and all subsequent inspections until compliance is

5    achieved. Notwithstanding the provisions of Section 22.202.050, the compliance inspection

6    charges shall be deposited in the General Fund((, or )) .

7           2. ((One Hundred Dollars ($100.00))) $100 per day from the date a tenant fails

8    to reimburse The City of Seattle for emergency relocation assistance as required by subsection

9    ((D of Section)) 22.206.265.D until the date the relocation assistance is repaid to The City of

10   Seattle.

11          3. ((One Hundred Dollars ($ 100.00))) $100 per day for any person who

12   provides false or misleading information to the Director and as a result of the false or

13   misleading information is paid emergency relocation assistance by The City of Seattle for

14   which the person would not otherwise be eligible, from the date the person receives the

15   emergency relocation assistance until the date the relocation assistance is repaid to The City of

16   Seattle.

17        B. Any person who does not comply with an emergency order issued by the Director

18   pursuant to this Chapter 22.206 shall be subject to a cumulative civil penalty of up to ((One

19   Thousand Dollars ($1,000.00))) $1,000 per day from the date set for compliance until the

20   Director certifies that the requirements of the emergency order are fully complied with.

21        C. Any property owner who fails to deposit relocation assistance as required by

22   subsections ((F and G of Section)) 22.206.260.F and 22.206.260.G shall be subject to a

23   cumulative civil penalty of:

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1        1. For each tenant with a household income during the preceding ((twelve

2    (12))) 12 months at or below ((fifty (50))) 50 percent of the median family income for whom

3    the property owner did not deposit relocation assistance as required by subsection ((G of

4    Section)) 22.206.260.G:

5            a. ((Three Thousand Three Hundred Dollars ($3,300.00))) $3,300, plus

6            b. ((One Hundred Dollars ($100.00))) $100 per day from the date such

7    deposit by the property owner is required until the date the property owner pays to the City the

8    penalty provided for in subsection ((C1a)) 22.206.280.C.1.a; or

9        2. For each tenant with a household income during the preceding ((twelve

10   ())12(())) months greater than ((fifty ())50(())) percent of the median family income for whom

11   the property owner did not deposit relocation assistance as required by subsection ((G of

12   Section)) 22.206.260.G, ((One Hundred Dollars ($100.00))) $100 per day from the date such

13   deposit is required until the date on which the relocation assistance required by subsections ((F

14   and G of Section)) 22.206.260.F and 22.206.260.G is deposited with The City of Seattle.

15   D. Any owner of housing units who violates ((subsection C6 of Section 22.206.160))

16   subsection 22.206.160.C.6 shall be subject to a civil penalty of ((not more than Two Thousand

17   Five Hundred Dollars ($2,500.00))) $3,500.

18   E. Anyone who obstructs, impedes, or interferes with an attempt to inspect a building

19   or premises pursuant to the authority of an inspection warrant issued by any court or an

20   attempt to inspect a housing unit after consent to inspect is given by a tenant of the housing

21   unit shall be subject to a civil penalty of not more than ((One Thousand Dollars ($1,000.00)))

22   $1,000.

Last revised December 1, 2015                14

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1        F. ((~~Any person who violates or fails to comply with subsections A5, A6, or A7 of~~

2  ~~Section 22.206.180 shall be subject to a cumulative civil penalty of up to Five Hundred~~

3  ~~Dollars ($500.00) per violation per day. Each day that a separate action or inaction occurs that~~

4  ~~is a violation of subsections A5, A6 or A7 of Section 22.206.180 constitutes a separate~~

5  ~~violation.~~

6        ~~G.~~)) Civil actions to enforce <u>this</u> Chapter 22.206 shall be brought exclusively in Seattle

7  Municipal Court, except as otherwise required by law or court rule. The Director shall request

8  in writing that the City Attorney take enforcement action. The City Attorney shall, with the

9  assistance of the Director, take appropriate action to enforce <u>this</u> Chapter 22.206. In any civil

10  action filed pursuant to this ((~~chapter~~)) <u>Chapter 22.206</u>, the City has the burden of proving by

11  a preponderance of the evidence that a violation exists or existed. The issuance of a notice of

12  violation or an order following a review by the Director is not itself evidence that a violation

13  exists.

14        ((H))<u>G</u>. The violator may show, in mitigation of liability, that correction of the

15  violation was commenced promptly upon receipt of notice, but that compliance within the

16  time specified was prevented by an inability to obtain necessary materials or labor, inability to

17  gain access to the subject building, or other condition or circumstance beyond the control of

18  the violator, and upon a showing of the above described conditions, the court may enter

19  judgment for less than the maximum penalty.

20        Section 8. Section 22.206.305 of the Seattle Municipal Code, enacted by Ordinance

21  120302, is amended as follows:

22  **22.206.305 Tenant's private right of action ((:))**

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   Nothing in this ((Code)) Title 22 is intended to affect or limit a tenant's right to pursue a

2   private right of action pursuant to ((Chapter)) chapter 59.18 RCW for any violation of

3   ((Chapter)) chapter 59.18 RCW for which that chapter provides a private right of action.  When

4   an owner commits an act prohibited by ((SMC Sections 22.206.180 A1, 22.206.180 A2, or

5   22.206.180 A7)) Section 22.206.180, a tenant has a private right of action against the owner for

6   actual damages caused by the prohibited act.  To the extent that actual damages are unliquidated

7   or difficult to prove, a court may award liquidated damages of up to ((One Thousand Dollars

8   ($1,000.00))) $3,000 instead of actual damages.  Such damages when awarded are to be on a per

9   incident, rather than a per tenant, basis.  The prevailing party in any such action may recover

10   costs of the suit and attorney fees.

11   Section 8. To avoid instances of eviction proceedings resulting from nonpayment of a

12   housing cost increase after SDCI has determined that the effective date of the housing cost

13   increase can lawfully be delayed, the Council requests that SDCI work with tenants'

14   organizations to produce educational materials to ensure that tenants' understand the process and

15   how they can work with the City in the event of an eviction proceeding resulting from this

16   process.

17   Section 9. The Director shall report annually to the Affordable Housing, Neighborhoods

18   and Finance Committee, or its successor committee, on all activity related to Section

19   22.206.180.J. This report shall include the number of inquiries from tenants and landlords, the

20   number of inspections related to this provision, the outcome of those inspections, the number of

21   housing cost increases delayed based on a determination by the department or refunds or credits

22   required, and any interactions and information related to the Department's involvement in any

23   eviction proceedings. To the extent feasible, the Director should obtain records on evictions in

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   Seattle and review those records to determine if the Department conducted inspections at those

2   locations related to Section 22.206.180.J and if the eviction resulted from application of this

3   Section 22.206.180.J. The report shall be delivered to the Council by no later than June 15 of the

4   following calendar year (beginning June 15, 2017).

5       Section 10.  The provisions of this ordinance are declared to be separate and severable.

6   The invalidity of any clause, sentence, paragraph, subdivision, section or portion of this

7   ordinance, or the invalidity of its application to any person or circumstance, does not affect the

8   validity of the remainder of this ordinance, or the validity of its application to other persons

9   or circumstances.

10

Sara Belz/Faith Lumsden/Aly Pennucci
SDCI Tenant Protections ORD
D3

1   Section 11.  This ordinance shall take effect and be in force 30 days after its approval by

2 the Mayor, but if not approved and returned by the Mayor within ten days after presentation, it

3 shall take effect as provided by Seattle Municipal Code Section 1.04.020.

4   Passed by the City Council the 6th day of June_____, 2016, and

5 signed by me in open session in authentication of its passage this

6 6th day of June_____, 2016.

7

8

9        President Pro Tem of the City Council

10

11 Approved by me this 10 day of ____June____, 2016.

12

13

14        Edward B. Murray, Mayor

15

16 Filed by me this 17th day of ____June____, 2016.

17

18

19        Monica Martinez Simmons, City Clerk

20

21

22 (Seal)

23

Last revised December 1, 2015    18