The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARL HAGLUND,

            Plaintiff,

    v.

KSHAMA SAWANT, individually and in her
individual capacity as a member of the Seattle
City Council, and the CITY OF SEATTLE, a
Washington municipal corporation,

            Defendants.

No. 2:17-cv-01614-MJP

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

NOTE ON MOTION CALENDAR:
FEBRUARY 9, 2018

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

# **TABLE OF CONTENTS**

**Page**

I.   Relief Requested ........................................................................................................... 1

II.  Background ..................................................................................................................... 1

III. Principal Issues ............................................................................................................. 3

IV.  Argument ....................................................................................................................... 4

    A.   Legal Standard. ........................................................................................................ 4

    B.   Plaintiff's second claim fails to establish a right to recover for
        tortious interference. ................................................................................................. 5

    C.   Plaintiff's third claim fails to establish a violation of the common
        law of privacy or chapter 63.60 RCW. .................................................................... 8

        1.   Plaintiff cannot establish common-law misappropriation. ........................... 8

        2.   Plaintiff cannot establish the essential elements of a claim
            under chapter 63.60 RCW ........................................................................... 10

        3.   Plaintiff may not bring a claim under chapter 63.60 for the
            use of his name in a political campaign when that use did
            not falsely claim an endorsement. ............................................................... 11

        4.   Plaintiff's name was used in connection with matters of
            political, newsworthy, or public interest, including criticism
            and satire. ..................................................................................................... 11

        5.   The First Amendment protects robust public debate about
            matters of public interest. ............................................................................. 13

    D.   Plaintiff's eighth claim for relief fails to establish an equal
        protection violation. ............................................................................................... 15

        1.   Plaintiff must plead sufficient facts to establish a class-of-
            one equal protection claim. ........................................................................... 15

        2.   Plaintiff does not allege any facts establishing that
            defendants treated similarly situated landlords differently
            or that defendants acted irrationally. ........................................................... 16

    E.   Plaintiff's ninth claim fails to establish that defendants deprived
        him of any protected interest without due process of law. ...................................... 17

    F.   Plaintiff's constitutional claims against Councilmember Sawant
        are barred by the qualified immunity doctrine. ...................................................... 19

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

G.      The City may not be held liable under 42 U.S.C. § 1983 for the
        conduct plaintiff alleges, because such conduct was not a matter of
        established custom or policy. .................................................................................. 20

V.      Conclusion ........................................................................................................... 23

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - ii
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Penman*,
    75 F.3d 1311 (9th Cir. 1996) ....................................................................... 17

*Aronson v. Dog Eat Dog Films, Inc.*,
    738 F. Supp.2d 1104 (W.D. Wash. 2010)....................................................*passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................... 1, 5

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978) ........................................................................................ 17

*Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*,
    100 Wn.2d 343, 670 P.2d 240 (1983) .............................................................. 7

*Cawley-Herrmann v. Meredith Corp.*,
    654 F. Supp. 2d 1264 (W.D. Wash. 2009)........................................................ 9

*Chapman v. Houston Welfare Rights Org.*,
    441 U.S. 600 (1979)........................................................................................ 21

*Christie v. Iopa*,
    176 F.3d 1231 (9th Cir. 1999) ........................................................................ 22

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) .............................................................................. 1

*Collier v. City of Tacoma*,
    121 Wn.2d 737, 854 P.2d 1046 (1993)............................................................ 12

*Crown Point Dev., Inc. v. City of Sun Valley*,
    506 F.3d 851, 852–53 (9th Cir. 2007) ............................................................ 17

*Dent v. Cox Comm. Las Vegas, Inc.*,
    502 F.3d 1141 (9th Cir. 2007) .......................................................................... 2

*Envtl. Def. Center, Inc. v. E.P.A.*,
    344 F.3d 832 (9th Cir. 2003) .......................................................................... 13

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - iii
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

*F.C.C. v. Beach Comm., Inc.*,
    508 U.S. 307 (1993)................................................................................15

*Fed. Deposit Ins. Corp. v. Henderson*,
    940 F.2d 465 (9th Cir. 1991) ................................................................19

*The Fishing Co. of Alaska v. United States*,
    195 F. Supp. 2d 1239 (W.D. Wash. 2002)............................................17

*Freeman v. City of Santa Ana*,
    68 F.3d 1180 (9th Cir. 1995) ................................................................17

*Havsy v. Flynn*,
    88 Wn. App. 514, 945 P.2d 221 (1997) ..................................................6

*Heller v. Doe*,
    509 U.S. 312 (1993)................................................................................15

*Hood Canal Sand and Gravel, LLC v. Brady*,
    129 F. Supp.3d 1118 (W.D. Wash. 2015) ........................................15, 16

*IMS Health Inc. v. Sorrell*,
    630 F.3d 263 (2d Cir. 2010)...................................................................14

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989)..........................................................................20, 23

*Joplin Enters. v. Allen*,
    795 F. Supp. 349 (W.D. Wash. 1992) .................................................8, 13

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
    131 Wn.2d 133, 930 P.2d 288 (1997) ......................................................5

*LKS Enter., LLC v. City of Silverton*,
    No. 6:16-cv-00785-MC, 2017 WL 890085 (D. Or. Mar. 6, 2017)............17

*Lyon v. Chase Bank USA, N.A.*,
    656 F.3d 877 (9th Cir. 2011) ..................................................................1

*Mann Law Group v. Digi-Net Tech., Inc.*,
    No. C13-59RAJ, 2013 WL 3754808 (W.D. Wash. Jul. 15, 2013) ............6

*Mark v. Seattle Times*,
    96 Wn.2d 473, 635 P.2d 1081 (1981).......................................................8

*McDowell v. Paiewonsky*,
    769 F.2d 942 (3d Cir. 1985)....................................................................13

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - iv
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................................... 5

*Melville v. Bank of New York Mellon Corp.*,
    No. 2:17-CV-30-RMP, 2017 WL 4185469 (E.D. Wash. Sep. 21, 2017) .................................. 10

*Menotti v. City of Seattle*,
    409 F.3d 1113 (9th Cir. 2005) ............................................................................ 21

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ........................................................................................ 19

*Mitsuoka v. Fumoto Eng'g of Am., Inc.*,
    189 Wn. App. 1041, 2015 WL 5012929 (Wash. Ct. App. Aug. 24, 2015) ................................ 6

*Monell v. Dep't of Soc. Servs. of N.Y.*,
    436 U.S. 658 (1978) ................................................................................... 20, 21

*Morgan v. Tice*,
    862 F.2d 1495 (11th Cir. 1989) ........................................................................... 22

*N. Pacifica LLC v. City of Pacifica*,
    526 F.3d 478 (9th Cir. 2008) ............................................................................. 15

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ........................................................................................ 7

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013) ............................................................................ 13

*Ooley v. Citrus Heights Police Dept.*,
    603 Fed. Appx. 628 (9th Cir. 2015) .................................................................. 18, 19

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ........................................................................................ 7

*Paul v. Davis*,
    424 U.S. 693 (1976) ................................................................................... 18, 20

*Pleas v. City of Seattle*,
    112 Wn.2d 794, 774 P.2d 1158 (1989) ...................................................................... 6

*Reid v. Pierce Cty.*,
    136 Wn.2d 195, 961 P.2d 333 (1998) ....................................................................... 8

*Ruston v. Town Bd. for the Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010) ............................................................................... 15

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - v
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

*San Juan Cty. v. No New Gas Tax*,
    160 Wn.2d 141, 157 P.3d 831 (2007) ........................................................................ 12

*Siegert v. Gilly*,
    500 U.S. 226 (1991) ....................................................................................... 19, 20

*Sisley v. Seattle School Dist. No. 1*,
    171 Wn. App. 227, 286 P.3d 974 (2012) ............................................................. 16

*Siu Man Wu v. Pearce*,
    No. C11–0860RSL, 2012 WL 1463307 (W.D. Wash. Apr. 27, 2012) ........................ 5

*Suarez Cor. Indus. V. McGraw*,
    202 F.3d 676 (4th Cir. 2000) .............................................................................. 13

*Tacoma Auto Mall v. Nissan N. Am., Inc.*,
    169 Wn. App. 111, 279 P.3d 487 (2012) ........................................................... 6, 8

*Tomosaitis v. Betchel Nat., Inc.*,
    182 Wn. App. 241, 327 P.3d 1309 (2014) ......................................................... 6, 7

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ............................................................................................. 15

*Virgil v. Time, Inc.*,
    527 F.2d 1122 (9th Cir. 1975) ......................................................................... 9, 12

*WMX Tech., Inc. v. Miller*,
    197 F.3d 367 (9th Cir. 1999) .............................................................................. 18

**Statutes and Ordinances**

42 U.S.C. § 1983 ................................................................................ 4, 19, 20, 23

Chapter 63.60 RCW ................................................................................... *passim*

RCW 42.17.020(37) ......................................................................................... 12

RCW 63.60.050 ......................................................................................... 10, 11

RCW 63.60.070 .............................................................................................. 11

Seattle Ordinance 125054 .......................................................................... *passim*

Tacoma Municipal Code 2.05.275 ................................................................... 12

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - vi
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ........................................................................... 14

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 4

Fed. R. Civ. P. 12(b) ...................................................................................................... 5

Fed. R. Civ. P. 12(c) ................................................................................................... 1, 4

Lynne E. Graybeal, *Right of Publicity Laws: Washington*, Practical Law State Q&A
    1-521-4632 (2016) ................................................................................................. 9

MERRIAM-WEBSTER UNABRIDGED (Online), *slumlord*, https://www.merriam-
    webster.com/dictionary/slumlord ...................................................................... 14

Restatement of Torts (Second) § 652C (1975) ......................................................... 8, 9

Restatement of Torts (Second) § 652D (1975) ......................................................... 8, 12

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2017 (3d ed. 1986) ..................... 12

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - vii
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

## I.      Relief Requested

Defendants Kshama Sawant ("Councilmember Sawant") and the City of Seattle (the "City") move under Fed. R. Civ. P. 12(c) for judgment on the pleadings with respect to plaintiff's second, third, eighth, and ninth causes of action. These four claims fail as a matter of law. Plaintiff's remaining claims also lack merit; defendants expect to move for their summary disposition by separate motion.

## II.      Background

Plaintiff filed a complaint in King County Superior Court on September 15, 2017. Plaintiff served Councilmember Sawant on October 1 and the City on October 9, 2017. After removing the case to this Court, defendants filed and served an answer (Dkt. #7) and moved for judgment on the pleadings (Dkt. #9). Plaintiff mooted this motion by filing an amended complaint (Dkt. #12), followed by a second amended complaint (Dkt. #23), both of which defendants answered (Dkt. #17, 24). Defendants seek judgment on the pleadings with respect to the second amended complaint ("SAC").

Although defendants have denied many of plaintiff's allegations, for purposes of this motion the facts alleged in the SAC are assumed to be true. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). Still, the Court need not accept "legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (no presumption of truth for legal conclusions). Here is what plaintiff alleges:

Plaintiff is a private citizen and Seattle resident. SAC ¶ 1.1. Councilmember Sawant is a private citizen, a Seattle resident, and an elected member of the Seattle City Council. *Id.* ¶ 1.2. The City is a Washington municipal corporation. *Id.* ¶ 1.3. As a real estate developer, plaintiff has a history of purchasing distressed Seattle properties and redeveloping them into quality residential apartment buildings and condominiums and of being involved in other business ventures. *Id.* ¶ 1.5.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS -  1
No. 2:17-cv-01614-MJP

PETER S. HOLMES
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

In the summer of 2015, plaintiff purchased Charles Street Apartments, a 13-unit apartment building, from someone who had allowed the property to fall into disrepair. *Id*. ¶ 1.6. Plaintiff planned to upgrade and modernize the building. *Id*. The building had just been inspected by an inspector approved by the City, who found no violations, so plaintiff proceeded to closing. *Id*. ¶ 1.7. But on October 2, 2015, the City, egged on by Councilmember Sawant, sent a small army of inspectors to perform a second inspection of the apartment building, using different standards. *Id*. ¶ 1.8. That inspection, according to plaintiff, "resulted in 225 trumped-up 'violations.'" *Id*.[1] The City did not conduct similar inspections on other landlords, nor did Councilmember Sawant suggest that it do so. *Id*. ¶ 1.9.

Councilmember Sawant publicized the 225 violations found at the Charles Street Apartments, including in a solicitation for campaign contributions distributed on October 9, 2015. *Id*. ¶ 1.10. Councilmember Sawant's statements about the violations found at the Charles Street Apartments received widespread attention. *Id*. Around the same time, Councilmember Sawant "began referring to Carl Haglund as a 'slumlord' and a 'notorious slumlord,'" despite not having done what plaintiff terms "an adequate investigation." *Id*. ¶ 1.11. Councilmember Sawant also distributed a campaign solicitation (**Ex. A** to SAC) that featured a picture of a rat with a name tag reading "Carl Haglund" and captioned "Slumlord." *Id*. This, too, attracted widespread attention. *Id*.

On October 7, 2015, Councilmembers Nick Licata and Mike O'Brien joined Councilmember Sawant in organizing a protest rally in front of plaintiff's office. *Id*. ¶ 1.12. The rally, which frightened plaintiff and his staff, was advertised using City funds, and the advertisement referred to the

---

[1] The City's notice of violation dated October 7, 2015, listing 225 violations of the Seattle Housing and Building Maintenance Code at the Charles Street Apartments (6511 Rainier Ave. South), is **Ex. B** to the Answer to Second Amended Complaint. The Court may take judicial notice of this document under Fed. R. Evid. 201(b)(2) and, because it is referenced in the complaint, may consider it without converting this motion into one for summary judgment. *See Dent v. Cox Comm. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

"notorious slumlord Carl Haglund." *Id*. Unlike Hugh Sisley, plaintiff did not achieve widespread notoriety as a slumlord until he was identified as such by the defendants. *Id*.

Councilmember Sawant proposed a rent-control ordinance that she dubbed the "Carl Haglund Law." *Id*. ¶ 1.13. This measure was eventually adopted as Ordinance 125054. *Id*.[2] The proposed ordinance and its nickname received widespread publicity. *Id*. Other unidentified City "officials" also referred to Ordinance 125054 as the "Carl Haglund Law" and referred to plaintiff as a slumlord, and those references appeared on the City's official website. *Id*. ¶ 1.14. Many news reporters and others picked up these references and repeated them. *Id*. Other Seattle landlords with lots of outstanding code violations, such as Hugh Sisley, Ken Cederstrand, and James Boyd, Jr., did not have their names attached to any City ordinance, despite the fact that they did not fix problems as quickly as plaintiff did, their properties generated complaints, and they incurred large fines. *Id*. ¶ 1.15.

As a result of defendants' conduct, plaintiff "has had his name, identity and reputation misappropriated and sullied," has "been forced to suffer public ridicule and ostracization," and has "suffered humiliation and severe emotional distress." *Id*. ¶ 1.16. No public official stood up to Councilmember Sawant or defended plaintiff. *Id*. Plaintiff gave notice of his tort claim (**Ex. B** to SAC), but the City refused to accept it or to "correct the defamatory statements." *Id*. ¶ 1.17.

## III.   Principal Issues

A.   A claim for tortious interference with business expectancy requires the plaintiff to prove a valid business expectancy, the defendant's knowledge of that expectancy, intentional interference causing termination of the expectancy, improper motive or means, and resultant damages. In addition, a defendant is not liable if she exercises an absolute right that is equal or superior to the

---

[2] A copy of Ordinance 125054 is attached as **Exhibit A** to this motion. The Court may take judicial notice of adopted ordinances under Fed. R. Evid. 201(b)(2) and, because Ordinance 125054 is cited in the complaint, it may be considered without converting this motion into one for summary judgment. *See* Note 1 above.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 3
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

right that was allegedly invaded. Does Mr. Haglund's tortious interference claim (his second claim for relief) fail as a matter of law?

B.      RCW 63.60.070 provides that consent to use an individual's name is not required for statements regarding political, newsworthy, or public-interest matters. Inasmuch as these exceptions all apply to the facts plaintiff alleges, does his claim for misappropriation of name and identity (his third claim for relief) fail to state a claim upon which relief may be granted?

C.      Plaintiff is not a member of a protected class, nor does he raise any fundamental right that is subject to special solicitude under the Fourteenth Amendment. Does he fail to establish a viable equal protection claim (his eighth claim for relief)?

D.      Plaintiff's due process claim rests upon an alleged property right in the use of his name and identity, as established by chapter 63.60 RCW. If no such right exists, does his derivative due process claim (his ninth claim for relief) also fail?

E.      A public official enjoys qualified immunity unless she knows that she is violating a clearly established constitutional right. Where Councilmember Sawant could not have known that she was violating any constitutional right, still less a clearly established one, must plaintiff's Section 1983 claims against her be dismissed?

F.      Where the City has no "policy" or "custom" of identifying slumlords and naming ordinances after them, must plaintiff's Section 1983 claims against the City be dismissed?

## IV.     Argument

### A.  Legal Standard.

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a defendant challenges the adequacy of a complaint under Rule 12(c) based on the failure to state a claim, the Court's review is the same as

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS -  4
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

if the motion had been filed under Rule 12(b)(6). *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "[A]llegations [that] are conclusory" are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which "must be supported by factual allegations." *Id*. at 678–79.

The plaintiff's allegations must also "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Therefore, a court may consider only the plausible, non-conclusory allegations in the complaint. The court must, at the same time, consider "any 'obvious alternative explanation' for defendant's conduct based on the court's 'judicial experience and common sense.'" *Siu Man Wu v. Pearce*, No. C11–0860RSL, 2012 WL 1463307, at *3 (W.D. Wash. Apr. 27, 2012) (Lasnik, J.) (quoting *Twombly*, 550 U.S. at 567, and *Iqbal*, 556 U.S. at 679).

**B. Plaintiff's second claim fails to establish a right to recover for tortious interference.**

The tort of wrongful interference with a contractual relationship or business expectancy has five elements: (1) the existence of a valid relationship or expectancy; (2) knowledge of that relationship or expectancy by the defendant; (3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; (4) interference by the defendant for an improper purpose or using improper means; and (5) resultant damages. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). To survive a motion to dismiss, a plaintiff must allege a set of facts that plausibly establishes each element of a tortious

interference claim.[3] Even if all five elements are present, "interference is justified as a matter of law if the interferer has engaged in the exercise of an absolute right equal or superior to the right which was invaded." *Tacoma Auto Mall v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 133, 279 P.3d 487 (2012) (internal citations omitted).

For three independent reasons, plaintiff's tortious interference claim fails as a matter of law. First, plaintiff does not plausibly allege that defendants intentionally interfered with his business expectancy for an improper purpose or using improper means. Plaintiff just makes a conclusory allegation that defendants' conduct in naming Ordinance 125054 the "Carl Haglund Law," branding him a slumlord, and holding protests at his office "was done with improper motive or through improper means." SAC ¶ 3.6.[4] Plaintiff fails to explain how or why defendants' interference was wrongful. *Cf. Pleas v. City of Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989) (interference can be "wrongful" by reason of a statute, regulation, common law rule, or established trade or custom). Plaintiff must show that the defendants had a "duty of non-interference," *id.*, but he cannot do so.[5]

Second, plaintiff fails to allege any specific pecuniary damages resulting from defendants' actions. *See Tomosaitis v. Betchel Nat., Inc.*, 182 Wn. App. 241, 249, 327 P.3d 1309 (2014) ("a claim of tortious interference with a business expectancy requires a threshold showing of resulting

---

[3] *See, e.g., Havsy v. Flynn*, 88 Wn. App. 514, 520, 945 P.2d 221 (1997) (dismissed for failure to plead facts showing improper purpose or means); *Mitsuoka v. Fumoto Eng'g of Am., Inc.*, 189 Wn. App. 1041, 2015 WL 5012929, at *6–7 (Wash. Ct. App. Aug. 24, 2015) (dismissed for failure to plead facts showing a valid contract or business expectancy); *Mann Law Group v. Digi-Net Tech., Inc.*, No. C13-59RAJ, 2013 WL 3754808, at *3–4 (W.D. Wash. Jul. 15, 2013) (dismissed for failure to plead facts showing knowledge, proximate cause, and improper purpose or means).

[4] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

[5] In *Pleas*, the court held that the City acted wrongfully because it had a duty to grant or deny plaintiff's building permits in a non-arbitrary fashion. Instead, it refused to act and delayed the plaintiff's project to curry favor with an influential neighborhood group. 112 Wn.2d at 804–05. Here, defendants were under no duty, statutory or otherwise, to refrain from calling Ordinance 125054 the "Carl Haglund Law," labeling plaintiff a slumlord, or encouraging plaintiff's tenants to speak out against him. *See* SAC ¶¶ 3.4–3.6. Unlike the conduct in *Pleas*, defendants' conduct here was not arbitrary and capricious because defendants took action in direct response to tenants' complaints about the derelict state of plaintiff's Charles Street Apartments and his decision to increase tenants' rents there. *See id.* ¶ 3.3; **Exhibit A** to this motion, p. 3.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 6
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

pecuniary damages."). Absent such a showing, a tortious interference claim is "nothing more than a defamation action under a different caption," and it must be dismissed. *See id*. at 252 (emotional harm and speculative reputational harm are not recoverable).[6]

The closest plaintiff comes to satisfying the requirement of showing pecuniary harm is his new allegation that defendants, through their protests, interfered with his expectancy that he could raise rents for the tenants in the Charles Street Apartments with impunity. They forced him to "back off." SAC ¶ 3.5. But this allegation illustrates the third fatal flaw in plaintiff's cause of action— namely, that protected speech cannot give rise to a claim for tortious interference.

In *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 346, 670 P.2d 240 (1983), the Washington Supreme Court addressed a claim for tortious interference with business expectancy arising from a "Do Not Patronize" article about the plaintiff in a union newspaper. The court held that the publication of constitutionally protected articles "cannot give rise to liability for the tort of business interference." *Id*. at 347. Citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982), the court held that the "opportunity to persuade others is clearly protected." *Caruso*, 100 Wn.2d at 348. The court then quoted from *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971): "Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices." *Caruso*, 100 Wn.2d at 348. The court in *Caruso* concluded: "Though perhaps coercive, [the union's] activity was speech in its purest form and thus is entitled to . . . protection." *Id*.

Far from establishing tortious interference, the conduct described in plaintiff's complaint reflects the absolute right—indeed, the duty—of public officials to discuss matters of public

---

[6] Plaintiff alleges that defendants "prevented or frustrated" his business expectancy to renovate the Charles Street building and develop a 400-unit residential project and other properties. SAC ¶¶ 3.2–3.4. But plaintiff does not allege any facts showing that defendants actually frustrated his plans to renovate the Charles Street building or develop new projects. Thus, plaintiff fails to plead any damages at all.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 7
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

concern, which includes encouraging plaintiff's tenants to demand reasonable living conditions. That absolute right justifies any alleged interference with plaintiff's business expectancy. *See Tacoma Auto Mall*, 169 Wn. App. at 133. Plaintiff's second claim for relief must be dismissed.

### C. Plaintiff's third claim fails to establish a violation of the common law of privacy or chapter 63.60 RCW.

Plaintiff claims that defendants "appropriated Carl Haglund's name and identity for their own use or benefit," creating liability for misappropriation under state common law and chapter 63.60 RCW. SAC ¶¶ 4.2–4.3. As a matter of law, this claim fails.

1.  Plaintiff cannot establish common-law misappropriation.

Washington has not recognized a common-law right of publicity. *See Joplin Enters. v. Allen*, 795 F. Supp. 349, 351 (W.D. Wash. 1992) (Coughenour, J.). Although Washington courts do recognize four types of invasion-of-privacy torts, including a claim of "misappropriation of a persona,"[7] plaintiff's allegations fail to establish such a claim.

Restatement of Torts (Second) § 652C (1975) states the common-law rule: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *See Reid v. Pierce Cty.*, 136 Wn.2d 195, 205–07, 961 P.2d 333 (1998) (citing Restatement (Second) § 652D for the rule governing publicity given to private facts). Comment *c* to Section 652C explains why Mr. Haglund may not claim appropriation here: Liability exists only if the defendant has "appropriated to his own use or benefit the ***reputation***, ***prestige***, ***social or commercial standing***, ***public interest*** or other values of the plaintiff's name or likeness." (Emphasis added.) Plaintiff does not allege that his name had reputation, prestige,

---

[7] *See Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (Strombom, J.); *Mark v. Seattle Times*, 96 Wn.2d 473, 497, 635 P.2d 1081 (1981).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 8
No. 2:17-cv-01614-MJP

standing, or public interest on which the defendants sought to capitalize. He alleges the opposite: that he was not well known until the defendants began to criticize him. *See* SAC ¶ 1.12.

Comment *d* to Section 652C reinforces the conclusion that plaintiff has failed to allege a plausible case of common-law misappropriation. It states:

> The value of the plaintiff's name is not appropriated . . . by reference to it in connection with legitimate mention of his public activities . . . . ***No one has the right to object merely because his name or his appearance is brought before the public***, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded.

*Id.* (emphasis added).[8] Claims for common-law misappropriation are rare in Washington, which is unsurprising given the statutory remedy in chapter 63.60 RCW.[9] Regardless, courts hold that a common-law claim for misappropriating one's persona—like the statutory claim—fails if the publication relates to matters that are in the public interest. *See Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (Strombom, J.) ("Under both the statutory cause of action and the common law, there is no cause of action for the publication of matters in the public interest."); *see also Virgil v. Time, Inc.*, 527 F.2d 1122, 1128–29 (9th Cir. 1975) (liability for invasion of privacy may be imposed only if the publicized matter "is of a kind which . . . is not of legitimate concern to the public.").

Plaintiff's allegations establish that defendants used his name in connection with matters of substantial public interest: hundreds of housing violations found in a 13-unit apartment building, and the City Council's consideration of a new ordinance limiting the ability of landlords to raise the rent on apartments with uncorrected housing violations. SAC ¶¶ 1.10–1.13; *see* **Exhibit A** to

---

[8] *See also Cawley-Herrmann v. Meredith Corp.*, 654 F. Supp. 2d 1264, 1266 (W.D. Wash. 2009) (Bryan, J.) ("Neither Plaintiff's name nor image are intimate details of her private life.").

[9] Lynne E. Graybeal, *Right of Publicity Laws: Washington*, Practical Law State Q&A 1-521-4632 (2016).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 9
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

this motion, p. 3.[10] As plaintiff emphasizes, defendants' statements were widely reported in the news media. *See id.* ¶¶ 1.10–1.14. The *Aronson* court explains:

> The use of a plaintiff's identity is not actionable where the publication relates to matters of the public interest, which rests on the right of the public to know and the freedom of the press to tell it. . . . . It is only when plaintiff's identity is used without consent to promote an unrelated product of defendant that the defense becomes unavailable.

738 F. Supp. 2d at 1113. In short, plaintiff's complaint fails to allege any facts establishing a viable common-law claim for invasion of privacy through misappropriation of his name and identity.

  2. <u>Plaintiff cannot establish the essential elements of a claim under chapter 63.60 RCW.</u>

  To state a claim for infringement of Washington's statutory right of publicity, a plaintiff must allege facts showing that the defendant

> use[d] or authorize[d] the use of [plaintiff's] name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or . . . disseminate[d] or publishe[d] such advertisements in this state, without written or oral, express or implied consent of the owner of the right . . . .

RCW 63.60.050. Where a plaintiff fails to allege facts establishing that the defendant made an unauthorized use of the plaintiff's name or personal information under chapter 63.60 RCW, the court will dismiss such claims with prejudice. *See, e.g., Melville v. Bank of New York Mellon Corp.*, No. 2:17-CV-30-RMP, 2017 WL 4185469, at *5 (E.D. Wash. Sep. 21, 2017).

  Apart from alleging that Councilmember Sawant used plaintiff's name to raise money for her political campaign (*see* SAC ¶ 4.4 & its **Ex. A**), which is discussed in the next section, plaintiff does not allege any conduct that plausibly falls within the scope of RCW 63.60.050. Simply using

---

[10] "[T]enants in rental units where Housing and Building Code violations exist can currently be subject to rent increases, as exemplified by the widely reported experience of tenants at the Charles Street Apartments located at 6511 Rainier Avenue South who received notices of large rent increases, some reported to be in excess of 100 percent, shortly before a City inspection found 225 Housing and Building Code violations on the site; and . . . prohibiting rent increases until rental units comply with housing code requirements will encourage landlords to comply with those standards and thereby promote the health, safety, and welfare of the general public[.]" Ordinance 125054, p. 3.

plaintiff's name in public debate does not constitute use of his name or likeness on or in "goods, merchandise, or products" sold in Washington. Nor does it constitute use of his name "for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations." *See* RCW 63.60.050. Therefore, defendants' conduct does not implicate, much less violate, the anti-merchandising statute that plaintiff invokes.

3. <u>Plaintiff may not bring a claim under chapter 63.60 for the use of his name in a political campaign when that use did not falsely claim an endorsement.</u>

Plaintiff's claim in SAC ¶ 4.4 that Councilmember Sawant used his name "to solicit donations for her political campaign" is barred under RCW 63.60.070(2)(b), which states: "This chapter does not apply to the use . . . of an individual's . . . name, voice, signature, photograph, or likeness in . . . any political campaign when the use does not inaccurately claim or state an endorsement by the individual." No one could read Councilmember Sawant's campaign solicitation (**Ex. A** to SAC) as suggesting that Mr. Haglund endorsed her re-election. Quite the opposite: the two were obvious antagonists.

4. <u>Plaintiff's name was used in connection with matters of political, newsworthy, or public interest, including criticism and satire.</u>

Even if plaintiff's claim were not already barred by the language of RCW 63.60.050 and RCW 63.60.070(2)(b), it would fail under RCW 63.60.070(1):

> For purposes of RCW 63.60.050, the use of a name . . . in connection with matters of cultural, historical, ***political***, religious, educational, ***newsworthy***, or ***public interest***, including, without limitation, ***comment***, ***criticism***, ***satire***, and ***parody*** relating thereto, shall not constitute a use for which consent is required under this chapter.

RCW 63.60.070(1) (emphasis added). As this provision recognizes, the right to limit the unconsented use of one's name must itself be limited to avoid muzzling public debate. RCW

63.60.070(1) wholly forecloses plaintiff's claim under chapter 63.60 RCW. *See Aronson*, 738 F. Supp. 2d at 1113–14.

Plaintiff's own allegations establish that defendants used Mr. Haglund's name in connection with matters that were political,[11] newsworthy,[12] and of substantial public interest. According to the plaintiff, Councilmember Sawant used his name (1) to "publicize[] the 225 violations found at the Charles Street building" (SAC ¶ 1.10); (2) to bring publicity to "her proposed rent control ordinance" (*id*. ¶ 1.13); and (3) to "solicit donations for her political campaign" (*id*. ¶ 4.4). These are all political matters that helped frame an important public debate.

In addition, plaintiff alleges that defendants' statements about him were "widely distributed publically [*sic*—publicly] to a large number of people and news reporters, and . . . redistributed repeatedly by a large number of people through news accounts and via the internet." *Id*. ¶¶ 1.10–1.11, 1.13–1.14. Plaintiff's complaint thereby establishes that defendants' statements about him were made in connection with matters that were newsworthy and of public interest. This concession vitiates plaintiff's claim under chapter 63.60 RCW.

Defendants' references to plaintiff when advocating on behalf of Ordinance 125054 also represent satirical uses of his name. Calling plaintiff a "slumlord" and distributing a picture of a rat with a "Carl Haglund" name tag constitute satire.[13] SAC ¶¶ 1.11–1.15; **Ex. A** to SAC. This lawsuit

---

[11] Washington law defines "political advertising" as communications "used for the purpose of appealing, directly or indirectly, for votes or for financial or other support in any election campaign." *San Juan Cty. v. No New Gas Tax*, 160 Wn.2d 141, 149 n.3, 157 P.3d 831 (2007) (quoting RCW 42.17.020(37)). Political signs relate "to the nomination or election of any individual for a public political office or advocat[e] any measure to be voted on . . . ." *Collier v. City of Tacoma*, 121 Wn.2d 737, 742, 854 P.2d 1046 (1993) (quoting TACOMA MUNICIPAL CODE 2.05.275).

[12] Something is "newsworthy" if it is of legitimate concern to the public. *Virgil v. Time, Inc.*, 527 F.2d 1122, 1128–29 (9th Cir. 1975) (citing Restatement (Second) of Torts § 652D (1975)) (holding liability for an invasion of privacy tort may be imposed only if the publicized matter "is of a kind which . . . is not of legitimate concern to the public.").

[13] Satire is defined as "holding up human or individual vices, folly, abuses, or shortcomings to censure by means of ridicule, derision, burlesque, irony or other method sometimes with an intent to bring about improvement." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2017 (3d ed. 1986).

is based entirely on defendants' criticisms of Mr. Haglund. The fact that defendants' use of plaintiff's name was critical rather than laudatory renders defendants' actions exempt from liability under RCW 63.60.070.

5.   The First Amendment protects robust public debate about matters of public interest.

In addition to plaintiff's failure to allege the essential elements of a claim under the common law or chapter 63.60 RCW, defendants' conduct is protected by the First Amendment. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687–89 (4th Cir. 2000) (recognizing government officials' First Amendment speech rights as part of their duty to investigate plaintiff and keep the public informed); *McDowell v. Paiewonsky,* 769 F.2d 942, 951 (3d Cir. 1985) (applying *New York Times* actual malice standard in defamation action against legislator).[14]

"Under the First Amendment, a cause of action for misappropriation of another's name and likeness may not be maintained against expressive works, whether factual or fictional." *Aronson*, 738 F. Supp. 2d at 1113. As *Aronson* also holds, use of a plaintiff's identity is not actionable where statements relate to matters of the public interest. *Id.* at 1113–14. In *Joplin*, the district court noted in dicta that, because the Washington State Constitution places an even higher value on free speech than does the U.S. Constitution, the plaintiff could not have asserted a cognizable right-of-publicity claim under Washington law.[15] *Joplin*, 795 F. Supp. at 351 (granting defendant's Rule 12(c) motion to dismiss plaintiff's right-of-publicity claim where defendant used plaintiff's likeness in a theatrical play).

The First Amendment protects the use of publicly available data, among other things. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1288 (9th Cir. 2013)

---

[14]   The Ninth Circuit has declined to address whether government defendants are entitled to First Amendment protection. *See Envtl. Def. Center, Inc. v. E.P.A.*, 344 F.3d 832, 849 n.23 (9th Cir. 2003).

[15]   In *Joplin*, the court ultimately applied California law under Washington's choice-of-law rules. 795 F. Supp. at 351.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 13
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

1  ("An athlete's right of publicity simply does not encompass publicly available statistical data.");

2  *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 271–72 (2d Cir. 2010) ("The First Amendment protects

3  even dry information, devoid of advocacy, political relevance, or artistic expression.").

4          Even if Mr. Haglund could allege facts sufficient to establish a plausible claim for

5  misappropriation under the common law or chapter 63.60 RCW, defendants' conduct would be

6  protected by the First Amendment. First, the statements about which plaintiff complains are all

7  "expressive works," *see* SAC ¶¶ 1.11–1.14 & its **Ex. A**, and that is true even if they are "fictional."

8  *See Aronson*, 738 F. Supp. 2d at 1113. Second, defendants cannot be held liable for statements

9  concerning matters of public interest,[16] because such statements are entitled to First Amendment

10  protection. *Id.* Third, defendants' statements were based on publicly available data about plaintiff,

11  as they concerned plaintiff's attempt to raise his tenants' rents despite hundreds of building code

12  violations at the Charles Street apartment building. SAC ¶ 1.10; **Exhibit A** to this motion, p. 3.

13  Based on publicly available data, defendants concluded that plaintiff was a "slumlord."[17] Because

14  defendants' use of plaintiff's name involved expressive works, addressed a matter of public

15  interest, and was based on publicly available data, plaintiff's third claim for relief is barred by the

16  First Amendment.

17

18

19

---

20  [16] Plaintiff admits that defendants' statements about him were matters of public interest. He alleges that they were

21  "widely distributed publically [*sic*—publicly] to a large number of people and news reporters, and . . . redistributed repeatedly by a large number of people through news accounts and via the internet." SAC ¶¶ 1.10–1.11, 1.13–1.14. *See* Part IV.C.4 above.

22  [17] A "slumlord" is defined as: (1) "a landlord who receives unusually large profits from substandard properties," MERRIAM-WEBSTER UNABRIDGED (Online), *slumlord*, https://www.merriam-webster.com/dictionary/slumlord; and (2)

23  "A real-property owner who rents substandard housing units in a crowded, economically depressed area and allows the units to fall into further disrepair, esp. while charging unfairly high rents;" and (3) "Loosely, the owner of any run-down rental property," BLACK'S LAW DICTIONARY (10th ed. 2014).

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 14
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

**D. Plaintiff's eighth claim for relief fails to establish an equal protection violation.**

1. <u>Plaintiff must plead sufficient facts to establish a class-of-one equal protection claim.</u>

Plaintiff's complaint does not allege that defendants treated Mr. Haglund differently due to his membership in a certain class or group. Rather, plaintiff seeks to raise an equal protection claim based on his being treated uniquely. *See* SAC ¶¶ 9.4–9.7. A plaintiff who does not allege membership in a class must plead sufficient facts to prevail under a "class of one" theory. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the City intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.* at 486; *see Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Hood Canal Sand and Gravel, LLC v. Brady,* 129 F. Supp. 3d 1118, 1125 (W.D. Wash. 2015) (Settle, J.) (quoting *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)). Furthermore, under rational-basis review, courts must uphold a government classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993). The government has no obligation to provide evidence to sustain the rationality of a classification. Rather, the burden is on the plaintiff. *Heller v. Doe*, 509 U.S. 312, 320 (1993). Here, plaintiff cannot meet that burden.

2.  <u>Plaintiff does not allege any facts establishing that defendants treated similarly situated landlords differently or that defendants acted irrationally.</u>

Plaintiff does not plausibly allege that defendants treated similarly situated landlords more favorably than plaintiff. To be sure, plaintiff alleges in conclusory fashion that other Seattle landlords—Hugh Sisley, Ken Cederstrand, and James Boyd, Jr.—are "similarly situated" because they own buildings with numerous outstanding code violations, which were reported to the City by their tenants.[18] SAC ¶¶ 1.15, 9.5–9.6. But plaintiff fails to allege that any other Seattle landlord has ever raised tenants' rents by up to 100 percent at a rental property that had over 200 building code violations. *See* **Exhibit A** to this motion, p. 3. Plaintiff's failure to plead such facts establishes that he was ***not*** situated similarly to other landlords. *See Brady,* 129 F. Supp. 3d at 1125.

The uniqueness of plaintiff's circumstances also demonstrates that defendants had a rational basis to treat plaintiff differently. Plaintiff's decision to increase rents at his Charles Street apartment building prompted his tenants to file complaints with the City. In turn, defendants passed Ordinance 125054, specifically prohibiting landlords from increasing rents if their properties fail to meet basic maintenance standards. *See* **Exhibit A** to this motion, p. 3. Defendants' statements were made in direct reference to plaintiff's rent increases, something the other landlords named in plaintiff's complaint were not accused of. Thus, as a matter of law, defendants' conduct passes rational-basis review. *See Brady*, 129 F. Supp. 3d at 1126.

Plaintiff also fails to allege facts showing the absence of any rational basis to subject his Charles Street apartment building to "additional inspections and higher inspection standards" than

---

[18] In *Sisley v. Seattle School Dist. No. 1*, 171 Wn. App. 227, 286 P.3d 974 (2012), the court considered a student newspaper article about "infamous landlords Drake and Hugh Sisley," who were reported to have accumulated "48 housing and building maintenance code violations" over 15 years. *Id.* at 228–29. The court held that 11 other news articles addressing "the deplorable conditions of the Sisley brothers' rental properties, referring to the brothers as among Seattle's worst 'slumlords' and reporting on the numerous housing code violations on their properties" (*id.* at 230), were relevant and admissible evidence. *See id.* at 231–33.

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 16
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

properties of other Seattle landlords. *See* SAC ¶ 9.6. Selective enforcement of valid laws does not by itself make the government's action irrational. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (rejecting argument that selective enforcement of facially valid ordinance denied equal protection); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("'[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard . . . or other arbitrary classification.'") (citation omitted). *See also LKS Enter., LLC v. City of Silverton*, No. 6:16-cv-00785-MC, 2017 WL 890085, at *7 (D. Or. Mar. 6, 2017) (slip copy) ("[M]aking a builder strictly comply with the building code's minimal requirements is, as a matter of law, rational.").[19]

Plaintiff apparently assumes that different treatment is always irrational or motivated by discrimination. "But this assumption is legally unsound and logically absurd: it would not only validate the 'everyone-else-was-driving-75' defense but create a cause of action for damages on such a claim." *The Fishing Co. of Alaska v. United States*, 195 F. Supp. 2d 1239, 1254 (W.D. Wash. 2002) (Zilly, J.). Plaintiff does not allege facts supporting a plausible equal protection claim.

### E.  Plaintiff's ninth claim fails to establish that defendants deprived him of any protected interest without due process of law.

Plaintiff asserts that RCW 63.60.010 gives him a "property right in the use of his name and identity" and that this entitles him to due process of law under the Fourteenth Amendment "before the government, or anyone cloaked with governmental authority, may deprive" him of his name and identity. SAC ¶ 10.3. Quite aside from the fact that no one has deprived plaintiff of his name or identity—he remains known as Carl Haglund, as he was before the events described in his

---

[19] *See also Armendariz v. Penman*, 75 F.3d 1311, 1328 (9th Cir. 1996), overruled on other grounds in *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852–53 (9th Cir. 2007) ("The City has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code.").

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 17
No. 2:17-cv-01614-MJP

complaint—plaintiff fails to allege facts establishing that he was denied any property or liberty interest vouchsafed to him by the Fourteenth Amendment.

First, for the reasons set forth above, plaintiff fails to make out a plausible violation of chapter 63.60 RCW. Simply stated, that statute does not apply to the facts as alleged by plaintiff. Therefore, it cannot provide the basis for a due process claim. The same thing is true of his tortious interference allegations. *See* SAC ¶ 10.3, last sentence ("Haglund also has a property interest in his real properties and in his right to his business expectancies.").

Second, even meritorious state-law tort claims do not constitute due process violations. As the Court observed in *Paul v. Davis*, 424 U.S. 693, 701 (1976), the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul* is squarely on point, as it addressed a due-process claim arising from alleged harm to reputation. The Court stated that "liberty" or "property" interests protected under the Fourteenth Amendment are quite different from a plaintiff's interest in his reputation. 424 U.S. at 711–12. Concluding that an injury to one's reputation by itself was not protected by the Constitution, the Court required that, in addition to the stigma inflicted on the plaintiff's reputation, a plaintiff must allege a distinct injury that infringes upon a previously recognized right. *Id.* at 711–12*; WMX Tech., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) ("[A]llegedly defamatory remarks made to the county and the public that could affect [plaintiff's] business reputation . . . is not sufficient to satisfy the requirement that a constitutionally protected property interest be at stake.").

Third, to state a due process claim, a plaintiff must allege facts showing that the government was the direct cause of the plaintiff's injury. *Ooley v. Citrus Heights Police Dept.*, 603 Fed. Appx. 628, 629 (9th Cir. 2015) (unpublished opinion) ("[T]he reactions of third parties to remarks made by the government do not constitute state action."). The *Ooley* court held that the

government's conduct, which led to an alleged campaign of neighborhood harassment against plaintiff, did not give rise to liability. *Id.* (affirming dismissal of plaintiff's due process, takings, and First Amendment claims). Here, plaintiff alleges that defendants' "naming" Ordinance 125054 after him[20] and calling him a slumlord led others to shun him; he was "forced to suffer public ridicule and ostracization, in both his personal life and his business endeavors." SAC ¶ 1.16. These injuries were not caused by defendants but rather by third parties. Defendants cannot be held liable under Section 1983 for injuries that were caused by others. *See Ooley*, 603 Fed. Appx. at 629.

### F. Plaintiff's constitutional claims against Councilmember Sawant are barred by the qualified immunity doctrine.

Even if plaintiff could allege a plausible constitutional claim, he could not recover against Councilmember Sawant. She enjoys qualified immunity with respect to acts as to which no constitutional violation would be readily apparent. The federal-law claims asserted against Councilmember Sawant must, therefore, be dismissed.

Whether a government official is entitled to qualified immunity is a question of law for the court to decide. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 477 (9th Cir. 1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). This question should be decided at the beginning of the case. *Siegert v. Gilly*, 500 U.S. 226, 233 (1991); *see Mitchell*, 472 U.S. at 526 (qualified immunity from federal claims encompasses not only immunity from liability, but also immunity from suit). To recover, a plaintiff must allege the violation of a constitutional right that was clearly established when the government official acted. This Mr. Haglund does not and cannot do.

The threshold issue is "whether the plaintiff has asserted a violation of a constitutional right *at all*." *Siegert*, 500 U.S. at 232–33 (emphasis added). In this case, as in *Siegert* and *Paul v. Davis*,

---

[20] Because the ordinance does not name Mr. Haglund, plaintiff presumably refers to statements made in support of it.

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

plaintiff has not asserted a violation of any constitutional right. Although he has alleged that his reputation was harmed, that is insufficient. *Siegert*, 500 U.S. at 234 (no constitutional protection for the interest in reputation). Plaintiff's attempt to bolster his claim for reputational harm by invoking an alleged property right under chapter 63.60 RCW fails as a matter of law. *See* Part IV.C above.

Even if a court were to find a constitutional right here, that right was not clearly established in 2015. No decision by the Supreme Court, the Ninth Circuit, or this Court grants such a right. Plaintiff's due process claim has not been recognized by the Supreme Court or by any lower court of which defendants are aware. *See Paul*, 424 U.S. at 711-12. Especially in light of plaintiff's novel legal arguments, one could not expect a reasonable government official in Councilmember Sawant's position to have believed that she was violating plaintiff's clearly established constitutional rights by referring to him as a slumlord or naming a remedial ordinance after him. Therefore, even if all of plaintiff's allegations are assumed to be true, Councilmember Sawant is entitled to qualified immunity.

### G. The City may not be held liable under 42 U.S.C. § 1983 for the conduct plaintiff alleges, because such conduct was not a matter of established custom or policy.

To allege facts establishing a plausible constitutional violation, a plaintiff must establish that a municipality violated the plaintiff's rights pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "Congress did not intend municipalities to be subject to vicarious liability for the federal constitutional or statutory violations of their employees." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 710 (1989). Because 42 U.S.C. § 1983 is the exclusive cause of action related to an alleged violation of the Constitution, plaintiff must satisfy the *Monell* standard to plead a plausible constitutional claim against the City.

*See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). That is, plaintiff must allege facts sufficient to show that the City violated his rights pursuant to a policy or custom that it had adopted. *See Monell*, 436 U.S. at 694–95.

There are three ways to show a municipal policy or custom:

> (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal citations omitted). Plaintiff cannot make any of these showings.

First, plaintiff alleges that the conduct about which he complains was part of a "longstanding custom or practice" of the City "beginning in late September or early October, 2015." SAC ¶ 9.4. This allegation is an oxymoron: It acknowledges that there was no "custom or practice" that predates the events recounted in plaintiff's complaint, still less a "longstanding" one.

Plaintiff's claim is also belied by the facts that he alleges to support his "custom or practice" claim: (1) the City organized and advertised a protest rally (using taxpayer funds) at plaintiff's office; and (2) the City "allowed" Councilmember Sawant and other City officials to brand Ordinance 125054 as the "Carl Haglund Law" and "ratified" that label by publishing the Ordinance's unofficial name on the City website and other publications.[21] *Id.* Plaintiff fails to establish what policy or custom, if any, the City has with respect to organizing public protests or unofficially naming ordinances. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (holding

---

[21] Yet plaintiff also alleges that "no public official had the courage to stand-up [*sic*] against Sawant and her collaborators." SAC ¶ 1.16. Far from alleging that Councilmember Sawant's actions and statements reflect longstanding practice or custom of the City, plaintiff alleges that they were so unusual as to call for intervention by other City officials.

"[p]laintiffs cannot satisfy the requirement of a longstanding practice or custom, because they allege to the contrary that a county official has singled them out for unique treatment"). Simply labelling something "a longstanding custom or practice" does not make it one for purposes of pleading a plausible claim under *Iqbal and Twombly*.

Second, plaintiff fails to plausibly allege that Councilmember Sawant or other City officials had final policymaking authority to carry out an allegedly unconstitutional agenda. To be sure, plaintiff alleges baldly that Councilmember Sawant and other City officials "held final policy making authority" to subject plaintiff's building to additional inspections and higher inspection standards. SAC ¶¶ 9.4, 9.6. Even if certain employees of the City's Department of Construction and Inspection ("DCI") possess this authority, plaintiff has not alleged facts establishing that any DCI employee in fact subjected plaintiff to different inspection standards without a rational basis or otherwise deprived him of a constitutionally protected property right. *See* Parts IV.D & IV.E. Nor can plaintiff plausibly allege that Councilmember Sawant possesses final authority to carry out such inspections. Likewise, because plaintiff fails to provide details about any alleged City policy or custom to unofficially name ordinances or to issue allegedly defamatory statements, he cannot plausibly allege that any employee of the City had final authority to carry out this nonexistent policy or custom. *See Morgan v. Tice*, 862 F.2d 1495, 1499 (11th Cir. 1989) ("There is nothing here in the record to indicate that [the town manager] was clothed with the power by the [town] to make the alleged defamatory statements about [plaintiff].").

Third, plaintiff does not allege that Councilmember Sawant or other City officials delegated their authority to, or ratified the decision of, a subordinate who conducted additional building inspections of plaintiff's property or defamed the plaintiff. And no such allegation would be plausible. Because plaintiff does not allege facts establishing that the City violated his

DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS - 22
No. 2:17-cv-01614-MJP

**PETER S. HOLMES**
Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

constitutional rights pursuant to an official policy or custom, as required by *Monell*, the City

cannot be held vicariously liable under Section 1983 for the alleged torts committed by

Councilmember Sawant. *See Jett*, 491 U.S. at 710.

### V.  Conclusion

Judgment on the pleadings should be entered dismissing plaintiff's second, third, eighth,

and ninth causes of action.

DATED this 17th day of January 2018.

PETER S. HOLMES
Seattle City Attorney

By:  */s/ Michael K. Ryan*
Michael K. Ryan, WSBA #32091
Assistant City Attorney
E-mail: Michael.Ryan@seattle.gov

701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone: (206) 684-8200

K&L GATES LLP

By: */s/ Robert B. Mitchell*
Robert B. Mitchell, WSBA #10874
E-mail: rob.mitchell@klgates.com

Raina V. Wagner, WSBA #45701
E-mail: raina.wagner@klgates.com

925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: (206) 623-7580

Attorneys for Defendants