1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 CARL HAGLUND,                                    CASE NO. C17-1614-MJP

11                        Plaintiff,               ORDER GRANTING
                                                   DEFENDANT'S MOTION FOR
12          v.                                     PARTIAL JUDGMENT ON THE
                                                   PLEADINGS
13 KSHAMA SAWANT and the CITY OF
   SEATTLE,

14
                         Defendants.

15

16          THIS MATTER comes before the Court on Defendant's Motion for Judgment on the

17 Pleadings.  (Dkt. No. 25.)  Having considered the Motion, the Response (Dkt. No. 29), the Reply

18 (Dkt. No. 31), and all related papers, the Court GRANTS the Motion.  The Court declines to hear

19 oral argument on the matter.

20                                     **Background**

21          Plaintiff Carl Haglund is a real estate developer and landlord who owns residential

22 properties throughout Seattle, Washington.  (Dkt. No. 23 at ¶ 1.5.)  Defendants are the City of

23 Seattle (the "City") and Seattle City Councilmember Kshama Sawant ("Councilmember

24 Sawant").  (Id. at ¶ 1.2.)

1    In July 2015, Plaintiff purchased the Charles Street Apartments. (Id. at ¶¶ 1.6, 1.8.)

2    Though the apartments were in disrepair, they passed the City's initial inspection with no

3    violations. (Id. at ¶ 1.7.) In October 2015, apparently at Councilmember Sawant's urging, the

4    City sent inspectors to perform a second inspection. (Id. at ¶ 1.8.) These inspectors identified

5    225 violations, the majority of which Plaintiff claims were "extremely minor in nature" or "were

6    caused by the tenants themselves, who neglected to take care of their units or who were living

7    with too many people crowded into a unit." (Id.) Thereafter, Plaintiff claims Councilmember

8    Sawant "gleefully publicized" the violations and began publicly referring to Plaintiff as a

9    "slumlord" and a "notorious slumlord." (Id. at ¶¶ 1.10-11.) In particular, Plaintiff claims that (1)

10   Councilmember Sawant and other members of the City Council publicly referred to a proposed

11   rent-control ordinance, eventually adopted as Ordinance 124054, as the "Carl Haglund Law"; (2)

12   Councilmember Sawant led a protest against the "notorious slumlord Carl Haglund" and

13   advertised the protest using municipal funding; and (3) Councilmember Sawant repeatedly

14   solicited contributions for her re-election campaign using Plaintiff's name. (Id. at ¶¶ 1.8, 1.10-

15   1.14, Ex. C.) One of these solicitations featured a picture of a rat wearing a name tag reading

16   "Carl Haglund" and captioned with the label "Slumlord!" while another announced "225 housing

17   violations at Slumlord Haglund's building." (Id. at ¶ 1.10, Ex. A.)

18        Plaintiff contends that he "did not achieve widespread public notoriety as a 'slumlord'

19   until Councilmember Sawant and the City named a law after him and began paying to advertise

20   protest rallies calling [him] the 'notorious slumlord.'" (Id. at ¶ 1.12.) As a result, Plaintiff

21   contends he "has had his name, identity and reputation misappropriated and sullied," and has

22   been "forced to suffer public ridicule and ostracization, in both his personal life and his business

23   endeavors." (Id. at ¶ 1.16.)

24

On July 12, 2017, Plaintiff served the City with a Notice of Tort Claim and Request for Timely Correction. (Id. at ¶ 1.17, Ex. B.) After Defendants refused to correct the allegedly defamatory statements, Plaintiff filed this action.[1] (Id.) Plaintiff alleges causes of action for (1) outrage and intentional infliction of emotional distress; (2) tortious interference with a business expectancy; (3) misappropriation of his name and identity; (4) false light; (5) defamation; (6) defamation per se; (7) negligent infliction of emotional distress; (8) violation of equal protection; and (9) violation of due process. (Id. at ¶¶ 2.1-10.7.)

Defendants now move for judgment on the pleadings as to Plaintiff's claims for tortious interference, misappropriation, and violation of equal protection and due process. (See Dkt. No. 25.)

## Discussion

### I. Legal Standard

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009) (citations omitted). The standard of review is identical to that of a motion for dismissal under Rule 12(b)(6). See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)).

---

[1] The case was initially filed in King County Superior Court, but was removed by Defendants in October 2016. (See Dkt. No. 1.)

## II. Tortious Interference

Plaintiff contends that by naming Ordinance No. 125054 the "Carl Haglund Law" and referring to him as a "slumlord," Defendants interfered with his "business expectancy" in "conduct[ing] business in the City of Seattle as a landlord, as well as a developer and redeveloper of property," including at the Charles Street Apartments. (Dkt. No. 23 at ¶ 3.2.) In particular, Plaintiff claims that Defendants solicited tenants of the Charles Street Apartments to "speak out against him" and that their interference caused Plaintiff to "back off on the rent increases" he had planned. (Id. at ¶ 3.5.)

A claim for tortious interference has five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship or expectancy; (3) the intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the interference was for an improper purpose or used improper means; and (5) resultant damage. Hudson v. City of Wenatchee, 94 Wn. App. 990, 998 (1999). Importantly, "a claim for tortious interference with a business expectancy requires a threshold showing of resulting pecuniary damages." Tamosaitis v. Bechtel Nat'l, Inc., 182 Wn. App. 241, 249 (2014).

The Court finds that Plaintiff has not plead sufficient facts to support his tortious interference claim. First, Plaintiff has not identified any lost profits, increased costs, or lost financing; has not identified a single investor or lender who declined to enter into a real estate venture or extend him a loan; and has not identified a single tenant who refused to pay rent, comply with existing lease terms, or enter into a prospective lease. Second, Plaintiff has not identified any mandatory action that Defendants took to force any lease concessions. Indeed, Plaintiff concedes that he "back[ed] off on rent increases" himself, instead of "letting the code

1  enforcement process play out" on the violations.  (Dkt. No. 23 at ¶ 3.5; Dkt. No. 29 at 12.)

2  Plaintiff's claim for tortious interference fails, as liability cannot be imposed based on his

3  "voluntary business decisions" nor premised on his "independent unsubstantiated decision . . .

4  that it would be unavailing to seek a possible administrative remedy accorded him under the

5  law."  Pleas v. City of Seattle, 112 Wn.2d 794, 815-16 (1989) (quoting King v. Seattle, 84

6  Wn.2d 239, 251-52 (1974)).

7          Therefore, the Court GRANTS Defendants' motion with respect to the tortious

8  interference claim.

9  **III.     Misappropriation and Right of Publicity**

10         Plaintiff contends that Defendants "appropriated his name and identity for their own use

11  or benefit" and brings claims for common law misappropriation and violation of his right of

12  publicity under RCW 63.60.050.  (Dkt. No. 23 at ¶¶ 4.1-4.6.)

13         To state a claim for misappropriation, Plaintiff must allege facts showing that Defendants

14  appropriated his name or likeness to their advantage, commercially or otherwise.  See Aronson v.

15  Dog Eat Dog Films, Inc., 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (citing Restatement

16  (Second) of Torts §§ 652A-E (1977)).  Under both the common law and the statutory causes of

17  action, "[t]he use of a plaintiff's identity is not actionable where the publication relates to matters

18  of the public interest, which rests on the right to know and the freedom of the press to tell it. . . .

19  If the purpose is informative or cultural, the use is immune; if it serves no such function but

20  merely exploits the individual portrayed, immunity will not be granted."  Id. at 1113-14

21  (citations omitted); see also RCW 63.60.070(1) (providing that "the use of a name . . . in

22  connection with matters of cultural, historical, political, religious, educational, newsworthy, or

23

24

public interest, including, without limitation, comment, criticism, satire, and parody relating thereto, shall not constitute a use for which consent is required under this chapter.").

The Court finds that Plaintiff has not plead sufficient facts to establish a claim for misappropriation or violation of his right of publicity. First, Plaintiff's own allegations establish that Defendants used his name in connection with matters of public interest. In particular, Plaintiff alleges that Councilmember Sawant used his name (1) to "publicize[] the 225 violations found at the Charles Street building"; (2) to bring publicity to "her proposed rent control ordinance"; and (3) to "solicit donations for her political campaign." (Dkt. No. 23 at ¶¶ 1.10, 1.13, 4.4.) Certainly, Plaintiff's decision to increase rents following the discovery of code violations at the Charles Street Apartments—and his tenants' decision to protest these rent increases—are matters of public interest. Indeed, Plaintiff concedes that Defendants' statements were "widely distributed publically [sic] to a large number of people and news reporters, and . . . redistributed repeatedly by a large number of people through news accounts and via the internet." (Id. at ¶¶ 1.10-1.14.)

Second, Plaintiff has failed to allege that Defendants "use[d] or authorize[d] the use of [his] name . . . or likeness on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations . . ." RCW 63.60.050. While Plaintiff alleges that Councilmember Sawant used his name to raise money for her political campaign, the statute by its terms does not apply to use of an individual's "name, voice, signature, photograph, or likeness in . . . any political campaign *when the use does not inaccurately claim or state an endorsement by the individual.*" RCW 63.60.070(2)(b) (emphasis added). Plaintiff does not allege that Councilmember Sawant's campaign solicitations could reasonably be understood to

1  claim or state his endorsement.  To the contrary, these solicitations evince unambiguous

2  antipathy between landlord and politician.  (See Dkt. No. 23, Ex. A.)

3      Therefore, the Court GRANTS Defendants' motion with regard to the misappropriation

4  and right of publicity claims.

5  **IV.    Equal Protection**

6      Plaintiff contends that other "similarly situated" local landlords with outstanding code

7  violations—namely, Hugh Sisley, Ken Cederstrand, and James Boyd, Jr.—were not subjected to

8  additional inspections or singled out as "slumlords," and claims that by singling him out for such

9  treatment, Defendants violated his Fourteenth Amendment right to Equal Protection for which

10  they are liable under 42 U.S.C. § 1983. (Dkt. No. 23 at ¶¶ 9.1-9.7.)

11      "When an equal protection claim is premised on unique treatment rather than on a

12  classification, the Supreme Court has described it as a 'class of one' claim.  N. Pacifica LLC v.

13  City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).  Class-of-one plaintiffs "must show an

14  extremely high degree of similarity between themselves and the persons to whom they compare

15  themselves."  Hood Canal Sand and Gravel, LLC v. Brady, 129 F. Supp. 3d 1118, 1125 (W.D.

16  Wash. 2015) (citation omitted).  "In order to claim a violation of equal protection in a class of

17  one case, the plaintiff must establish that [Defendants] intentionally, and without rational basis,

18  treated the plaintiff differently from others similarly situated."  Pacifica, 526 F.3d at 486.  The

19  Court must uphold the classification "if there is any reasonably conceivable state of facts that

20  could provide a rational basis for the classification."  F.C.C. v. Beach Commc'ns., Inc., 508 U.S.

21  307, 313 (1993).

22      The Court finds that Plaintiff has not plead sufficient facts to support his equal protection

23  claim.  First, Plaintiff claims that Sisley, Cederstrand, and Boyd "own buildings with numerous

24

1  outstanding code violations" and "have had similar violations with respect to their rental

2  properties." (Dkt. No. 23 at ¶ 1.15.) However, Plaintiff fails to establish an "extremely high

3  degree of similarity" to these landlords, as he does not claim that Sisley, Cederstrand, or Boyd

4  raised rents following code violations or that their tenants protested such rent increases. Second,

5  Plaintiff fails to allege that the City's decision to enforce its codes was irrational, or that it was

6  merely pretext for an impermissible motive, as required under a "class-of-one" theory. Freeman

7  v. City of Santa Ana, 68 F.3d 1180, 1188 (9th Cir. 1995) ("Selective enforcement of valid laws,

8  without more, does not make the defendants' action irrational.").

9      Therefore, the Court GRANTS Defendants' motion with regard to the equal protection

10 claim.

11 **V.    Due Process**

12     Plaintiff contends that he had a "property right in the use of his name and identity under

13 RCW 63.60.010" and "in his real properties and in his right to his business expectancies" which

14 Defendants deprived him of by "misappropriating his name and identity for the purposes of

15 naming a City ordinance after [him], without first giving [him] notice and an opportunity for a

16 fair hearing on whether he was in fact a 'slumlord' or the 'notorious slumlord' . . ." (Dkt. No. 23

17 at ¶¶ 10.1-10.7.)

18     The Court finds that Plaintiff has not plead sufficient facts to support his due process

19 claim. First, Plaintiff has failed to establish his claims for right of publicity or tortious

20 interference for the reasons discussed, supra, and these claims cannot form the basis for his due

21 process claim. Second, even if these claims were supported, Plaintiff has identified neither a

22 "liberty" nor a "property" interest, nor any governmental action depriving him of these interests.

23 See Paul v. Davis, 424 U.S. 693, 701 (1976) (holding that a person's interest in reputation "is

24

1  neither 'liberty' nor 'property' guaranteed against state deprivation without due process of

2  law.").

3  Therefore, the Court GRANTS Defendants' motion with regard to the due process claim.

4  **Conclusion**

5  Because the allegations in Plaintiff's Amended Complaint, even if accepted as true and

6  viewed in the light most favorable to Plaintiff, do not support his claims for tortious interference,

7  misappropriation and violation of his right of publicity, equal protection, or due process, the

8  Court GRANTS Defendants' Motion for Judgment on the Pleadings as to each of these claims.

9  The clerk is ordered to provide copies of this order to all counsel.

10  Dated May 15, 2018.

11

12  _____

Marsha J. Pechman
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24