**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 10 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CARL HAGLUND,<br><br>            Plaintiff-Appellant,<br><br>   v.<br><br>KSHAMA SAWANT, individually and in her individual capacity as a member of the Seattle City Council; CITY OF SEATTLE,<br><br>            Defendants-Appellees. | No.   18-35546<br><br>D.C. No. 2:17-cv-01614-MJP<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted June 5, 2019
Seattle, Washington

Before: RAWLINSON, BEA, and NGUYEN, Circuit Judges.

This dispute concerns a landlord and a Seattle City Councilmember. The landlord, Carl Haglund, purchased a run-down 13-unit apartment building called the Charles Street Apartments in the summer of 2015, hoping to spruce it up and turn a profit. Though the apartments were in disrepair, they passed the City's initial

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

inspection with no violations. Meanwhile, Councilmember Kshama Sawant was running for re-election, and she had heard about Haglund's imposition of large rent increases on his tenants—some in excess of 100 percent.

At Sawant's urging, a "small army of inspectors" re-inspected the Charles Street Apartments on October 2, 2015. This time, the inspection turned up 225 housing code violations. Sawant publicized the violations, including a solicitation for campaign contributions distributed on October 9, 2015, and she soon after proposed a remedial ordinance she dubbed the "Carl Haglund Law."

Haglund filed suit against Sawant and the City of Seattle, bringing (as relevant here) state law claims for tortious interference with a business expectancy and misappropriation of his name and identity, as well as federal claims under 42 U.S.C. § 1983 for violations of equal protection and due process. The district court granted Sawant and the City's motion for partial judgment on the pleadings.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's judgment on the pleadings under Rule 12(c), *see Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019), and we affirm.

1. A plaintiff claiming tortious interference with a business expectancy must establish, among other things, the defendant's intentional interference in the plaintiff's business expectancy for an improper purpose or by improper means.

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). "Exercising in good faith one's legal interests is not improper interference." *Id.*

"The opportunity to persuade others to action is clearly protected" as a legal interest. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 670 P.2d 240, 242 (Wash. 1983). Defendants "plainly intended to influence [Haglund's] conduct by their [peaceful] activities" as they "were engaged openly and vigorously in making the public aware of [his] real estate practices." *Id.* at 242-43 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982)). Therefore, Haglund failed to state a plausible tortious interference claim.

2. Haglund's claim for common law misappropriation of his name also cannot succeed. First, the First Amendment bars Haglund's claim against Councilmember Sawant. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1271 (9th Cir. 2013) (explaining that state misappropriation claims must be "consistent with the First Amendment"). Statements about the code violations at Haglund's apartment building are plainly statements in the public interest, while organizing protests and dubbing the rent-control ordinance the "Carl Haglund Law" represent political advocacy at the core of the First Amendment's protections. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 52-53 (1976).

Second, as to the City, Haglund alleged only that its website included a few stray references to his name in connection with the proposed rent control ordinance. "The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities . . . ." Restatement (Second) of Torts § 652C cmt. d (Am. Law Inst. 1977).[1]

3. Because Haglund's federal due process claim is based on his state law claims, his failure to plead those claims adequately also dooms his constitutional due process claim.

4. Haglund's equal protection claim is equally meritless. To establish a violation of equal protection in a class of one case, the plaintiff must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Under the highly lenient rational basis standard, the City had ample grounds for treating Haglund differently than other Seattle landlords. The rent control ordinance was inspired *by Haglund*. The Ordinance recites "the widely reported experience of tenants at the Charles Street Apartments," who were subject to rent

---

[1] Because we dismiss Haglund's claim against the City on state law grounds, we need not decide whether the First Amendment's protections extend to municipal entities.

4

increases "in excess of 100 percent." Haglund provided no details explaining the purported similarities of other landlords, such as whether Hugh Sisley, Ken Cederstrand, or James Boyd Jr. ever had been found to have over 200 housing violations in a 13-unit apartment building, whether they had raised rents by 100%, or whether their tenants protested their rent increases. On that basis alone, the City has justified its selective treatment.

5. In any event, Haglund's federal constitutional claims fail for independent procedural reasons. As to Sawant, Haglund did not plead "clearly established statutory or constitutional rights of which a reasonable person would have known," which is required to overcome qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And as to the City, he did not plead that the putative constitutional violations reflect an established policy or custom adopted by the City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For those reasons as well, his constitutional claims under 42 U.S.C. § 1983 cannot survive judgment on the pleadings.

**AFFIRMED.**